[No. 21478. Department One. January 10, 1929.]

THE STATE OF WASHINGTON, *Respondent,* v. JACK STEELE, *et al., Appellants.*[1]

*Henry Clay Agnew,* for appellants.

*Ewing D. Colvin* and *Cordelia M. Thiel,* for respondents.

FULLERTON, C. J.—On March 28, 1928, the appellants, Steele and Williams, were informed against by

[1]Reported in 273 Pac. 742.

the prosecuting attorney of King county for the crime of robbery. The information contained three counts: The first count charged a taking of money from the person of one Otness; the second, a taking of money from the person of one Harper; and the third, a taking of a watch and money from the person of one Hamilton. There was a trial by jury, in which a verdict was returned finding each of the appellants guilty on each of the counts.

The testimony on the part of the state, as well as that on the part of the appellants, was to the effect that the acts thought by the state to constitute the offense of robbery occurred in an apartment house in rooms therein occupied by and under the control of Otness, one of the prosecuting witnesses. Their testimony differs widely, however, as to the nature of the acts.

In brief, the state's witnesses testified that Otness, Harper, Hamilton, the appellants and an unidentified person called by the appellant Bob, and possibly others, were together in Otness' rooms, when the appellants, without warning, drew revolvers, and menacing the others with the exception of Bob, directed them to throw up their hands and line up against the wall. That they then directed Bob to search their persons, which direction Bob obeyed, taking money from Otness and Harper, and money and a watch from Hamilton. That Bob, as he found the property, placed it on a table in front of the appellant Steele, who put it in his coat pocket.

After completing the robbery, the appellants left the place and were soon thereafter apprehended by the police of the city of Seattle. Who Bob was, or what became of him, the evidence offers no explanation, other than that he seems to have been the first person to leave the place after the transaction.

The testimony of the appellants was that Otness conducted a place for the illicit sale of intoxicating liquors, and in which gambling games were conducted.

Steele testified that he had been at Otness' place some weeks before, and had lost a considerable sum of money in a crap game, in which he suspected the other side had used "crooked" dice; that he later met the appellant Williams, and, knowing him to be an expert in the use of dice, took him to the place for the purpose of recouping his losses; that a dice game was started, in which the money and the watch which he and Williams were accused of stealing were bet on the result of the throw; that they won the throw, and while gathering up their gains were interfered with by the others, and used their revolvers to protect their winnings.

The appellant, Williams, testified much to the same purpose. He added, however, that the other side tried to win on this particular occasion by the use of crooked dice, and that he, to win, substituted crooked dice of his own, which were more effective than the dice the others used.

The errors assigned are directed to the rulings of the court in admitting testimony, and to the giving and the refusal to give certain instructions.

At the trial of the cause, one of the appellants became a witness in his own behalf. In his cross-examination by the attorney for the state, the fact was elicited that he theretofore had been convicted of a crime. The state's attorney then questioned him as to the nature of the crime he had committed and the extent of the punishment that had been inflicted upon him. Over his objection, interposed by his counsel, he was directed to, and did, answer the questions propounded to him.

The appellants argue at some length and with force that the action of the court is an abuse of the statutory provision (Rem. Comp. Stat., § 2290) permitting the

conviction of a crime to be proved against a witness to affect the weight of his testimony.

But, without following the argument, we cannot conclude that there was error committed in the ruling of the court. An examination of the statute will show that it is somewhat minute in its provisions. It permits the former convictions to be shown by the record of the conviction, by an authenticated copy thereof, by other competent evidence, or by the cross-examination of the witness; "upon which he shall answer any proper question relevant to that inquiry," and provides that the cross-examining party shall not be concluded by the answers of the witness.

It is at once apparent, of course, that if the record of the conviction is introduced, it will of necessity show the nature of the offense and the extent of the punishment, and, since cross-examination is only an alternate method of proving the conviction, we see no reason why the witness may not be examined as to any matter the record itself will show, and this we think was the purpose of that part of the statute we have above quoted.

Moreover, it is the common knowledge of every one conversant with the criminal statutes that acts are denounced by them as crimes, the conviction of which would have but little, if any, bearing on the weight of the testimony of the person convicted, given in another cause, while there are others of a nature so depraved that a conviction for their violation would be to put the perpetrator beyond the pale of consideration in the minds of all right-thinking people.

It is our view that the legislative body had these distinctions in mind when it framed and enacted the statute—that it was recognized that after a conviction had been shown, to show the nature of the crime could be as beneficial to the witness and to the party for

whom he was testifying as it would be to the other party—and that its purpose was to give to each of the parties such benefit as a showing of the nature of the crime might entail. But perhaps we are unnecessarily laboring the question. The view here expressed is the view this court took of the statute in the case of *State v. Evans,* 145 Wash. 4, 258 Pac. 845, and we are contented with the view there announced.

■ Another contention is that the trial court erroneously permitted a police officer to testify to statements made to him by persons other than the persons robbed, to the effect that they had been "stuck up" by the appellants.

If the record disclosed that such testimony had been admitted, doubtless the appellants would have just cause for complaint, as it is not competent proof of the crime charged against them to show that they had been accused of other crimes, even if the accusations were made in their presence. But we do not gather from the record that the trial court admitted such testimony. A police officer, called as a witness by the state, made some such statement, but it was stricken by the court, and the examination of the witness was not pursued further along that line. Witnesses oftentimes in giving their testimony make statements not pertinent to the issue, which might be otherwise prejudicial, but it is a sufficient remedy to strike the statement and inform the jury that it is not competent evidence on the cause before them.

■ The court gave to the jury the following instructions:

(1) "Robbery, as defined by our statute, is the unlawful taking of personal property from the person of another, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property.

"Such force or fear must be used to obtain or retain possession of the property taken, or to prevent or overcome resistance to the taking; in either of which cases the degree of force used, or the amount or value of property taken, is immaterial."

(2) "The defendants are charged and being tried in this case for robbery upon three separate counts, each one alleged to have been committed in this county and state on the 23rd day of March, 1928.

"In Count I they are charged with having, by force and violence, taken from one Robert Otness $85, against his will and by putting him in fear; in Count II, they are charged with having, in the same manner, taken from the person of one C. E. Harper the sum of $28; in Count III they are charged with having taken in the same manner, from the person of one Lloyd Hamilton, $5 and a watch."

(3) "To convict the defendants of the offense charged in Count I, the state must prove to you, beyond a reasonable doubt:

"That in King county, on or about the 23d of March, 1928, these defendants took from the person of one Robert Otness some sum of money, against his will and by means of force and by putting him in fear.

"To convict them of the offense charged in Count II, the state must prove, beyond a reasonable doubt:

"That on or about the 23d day of March, 1928, these defendants took from the person of one C. E. Harper some sum of money, against his will and by means of force and by putting him in fear.

"To convict them of the offense charged in Count III, the state must prove, beyond a reasonable doubt:

"That on or about the 23d of March, 1928, these defendants took from the person of one Lloyd Hamilton some sum of money, or a watch, against his will and by means of force and by putting him in fear."

(6) "The defendants have been charged jointly in this action and are now both on trial for the offense alleged in the information herein. It is not necessary either that both defendants be convicted or that both defendants be acquitted. You are to consider the question of the guilt or innocence of each of them. If you are convinced by the evidence in this case, beyond a

reasonable doubt, that both the defendants are guilty of the offense charged, as alleged in the information herein and as defined in these instructions, then you should return a verdict as to both of them. If you are so convinced of the guilt of only one of these defendants, then you should return a verdict of guilty as to that one and a verdict of not guilty as to the other of the defendants. If you are not so convinced of the guilt of either of the defendants, you should acquit them.''

It will be observed that the court did not, in the instructions, make the element of ownership of the property an essential ingredient of the crime. In substance, the charge is that, if the appellants took property from the persons of the prosecuting witnesses by means of force or violence or by putting them in fear, they were guilty of robbery, regardless of the ownership of the property. The omission is emphasized in this instance by the fact that the court refused a requested instruction to the effect that the jury must find, before the appellants could be found guilty, that the property taken was the property of some person other than the defendants.

In our opinion, the instructions were faulty in the respects mentioned. It is the rule, sustained by practically unanimous authority, that a person cannot be guilty of robbery by taking his own specific property from the person or possession of another, although the act of taking may be such as would constitute robbery if the property belonged to the person from whom it was taken. We do not seem ourselves to have passed upon the precise question, but we have held in a number of cases that it is necessary to allege in an indictment or information, charging robbery, that the ownership of the property taken was in some person other than the party taking it. *State v. Dengel,* 24 Wash. 49, 63 Pac. 1104; *State v. Morgan,* 31 Wash. 226, 71 Pac. 723;

*State v. Hall,* 54 Wash. 142, 102 Pac. 888; *State v. Hatch,* 63 Wash. 617, 116 Pac. 286; *State v. Rowan,* 84 Wash. 158, 146 Pac. 374; *State v. Martin,* 94 Wash. 313, 162 Pac. 356.

It follows, we think, as of course, that if it is necessary to allege ownership of the property taken in another than the accused, it is necessary to prove the allegation. The rule, moreover, is not without reason in its support. A contrary rule would prevent an owner of property who caught a thief in the act of carrying away his property from retaking the property by force or by putting the thief in fear, contrary to that general principle that a man has the right to protect his property against the unlawful invasion of another by such acts of force as are necessary to so protect it.

In our statement of the facts of the case we have outlined the testimony on the part of the appellants as to the transactions occurring at the place and time the state charges that the crime of robbery was committed. Based on this evidence, the appellants requested the court to instruct the jury that if the property was taken under the circumstances related by the appellants, in the honest belief that they were entitled to the property, however ill-founded such belief may have been, the jury could not convict them of the crime of robbery. The court refused to give the requested instruction, and did not instruct upon the question at all.

In our opinion the court committed error in failing so to do. It is fundamental, of course, that a defendant on trial for crime is entitled to have his version of the transactions thought to constitute the crime given to the jury, if such version tends to disprove his guilt. In robbery, as in larceny, it is essential that the taking be with a felonious intent, and unless it is so taken, the act of taking is not robbery.

So in this instance, if the jury believed from the evidence of the appellants that the property taken was wagered upon a crap game to be won or lost on the turn of the dice, that the appellants won the turn, and, in the honest belief that the property was theirs, sought to take it into their possession, they would not be guilty of robbery, even though they resisted with force and arms and by putting in fear the other parties to the wager, who sought to interfere and prevent their taking the property.

The state argues against the applicability of the rule last stated, because the appellants admit that they won the wager by the surreptitious use of crooked dice. But we shall not follow the argument. We think it beside the question. It is wholly one of good faith, and it is manifest that an honest belief in the ownership could be had by the appellants, regardless of the tricks to which each party resorted to effect a winning.

For the errors noticed, the judgment of conviction is reversed, and the cause remanded for a new trial.

MITCHELL, TOLMAN, and BEALS, JJ., concur.