.Argued October 30, affirmed December 3,.1973, petition for rehearing denied January 3, petition for review denied February 20, 1974

STATE OF OREGON, *Respondent, v.* EMMETT WOODROW MARTIN (No. 29207), *Appellant.*

516 P2d 753

Howard R. Lonergan, Portland, argued the cause and filed the briefs for appellant.

Timothy Wood, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and TANZER, Judges.

TANZER, J.

Defendant was indicted for robbery in the first degree. ORS 164.415. Following a jury trial he was convicted and sentenced to three years' imprisonment.

Defendant's first assignment of error challenges the denial of his general motion for judgment of acquittal. He argues for the first time on appeal that he could not be guilty of robbery because the state proved that he was merely attempting to collect a debt from the victim, William Barley. The state points out that defendant's claim has merit under our decision in State v. Trujillo, 7 Or App 236, 489 P2d 977 (1971), Sup Ct review denied (1972), which it attempts to distinguish, and contends that the claim is not reviewable because it was not raised in the trial court.

■ The specific grounds for a motion for judgment of acquittal must be stated to the trial court in order to lay the foundation for appeal. Otherwise there is no ruling of the trial court to be assigned as and reviewed for error. State v. Long, 246 Or 394, 425 P2d

528 (1967). The underlying reason for the requirement of specificity is that the court or the other party should be given the opportunity to rectify any omission or cure any error in the trial court, thereby assuring the integrity of the judgment and obviating the need for appellate review.

■ In this case, however, there was no possibility below for rectification of omission or cure of error. Instead, defendant claims that the facts proved by the state are not barred by the statute under which he is charged. Defendant's claim, if valid, would amount to manifest error and clear injustice, see *State v. Avent,* 209 Or 181, 183, 302 P2d 549 (1956), and *Trujillo* gives it color of validity. We therefore exercise our discretion to notice egregious error on appeal and examine the basic question of guilt or innocence in light of *Trujillo.*

The evidence shows that defendant did some body work on Barley's automobile. Barley said that they had agreed that the price would be $150, but after the work was completed, defendant demanded a total payment of $250-300. Defendant contended, on the other hand, that the agreed price was originally $300. Barley paid defendant a total of $129, and contended that he owed defendant only $21 more. Defendant, on the other hand, claimed that $126 was still due. Unable to reach an agreement, defendant filed an action in small claims court.

Three weeks before the time set for trial, Barley and defendant encountered each other. After a brief discussion about going to court, defendant produced a revolver and pointed it at Barley. Defendant then asked Barley if he had any money. When Barley

responded that he did not, defendant asked to see Barley's wallet. Barley handed defendant the wallet. While defendant was examining Barley's wallet, Barley shouted to a friend that he was being robbed by defendant, and that the friend should call the police. At that, defendant returned Barley's wallet, having found no money in it, and left the scene.

*State v. Trujillo,* supra, involved a defendant who was entitled to $17.35 in wages from his employer, and, after several requests for payment, helped himself at knife point to more than that amount from the till. We noted with approval the "majority rule" of an ALR annotation[1] that where the actor believes he is merely collecting a debt owed to him, he is acting without the *animus furandi,* intent to steal, which is required for the crime of robbery, but held that Trujillo was not entitled to the benefit of the rule because he had taken more than he believed himself entitled to. Thus, while the rule was noted with approval, it was not actually applied.

Here, as in *Trujillo,* the defendant believed in good faith that he was owed the amount which he had continually demanded of Barley, although he was unsuccessful. Moreover, there is no significant difference, for the purposes of this case, between the statutory scheme under which *Trujillo* was decided and the present statutes.[2] Therefore, if we adhere to the dicta

---

[1] Anno., Robbery—Intent to Collect Debt, 46 ALR2d 1227 (1956).

[2] Trujillo was convicted under former ORS 163.280, which treated robbery as an aggravated form of larceny. Under the present statutory scheme, robbery is considered an aggravated form of "theft." Under either scheme, the *animus furandi,* or felonious intent, is the intention to deprive another of property.

in *Trujillo,* defendant herein would not be guilty of robbery.

The rule approved in *Trujillo* is indeed held by a majority of the jurisdictions which have decided the issue, but most recent cases disavow it. In *State v. Ortiz,* 124 NJ Super 189, 305 A2d 800 (1973), the court termed the majority view "little more than a relic of days long past," and pointed out that only 11 jurisdictions in the United States had adopted or applied the rule by 1956, the date of the original ALR annotation, while one jurisdiction took the opposite view. Since 1956, the majority view has been followed twice,[3] while the opposite view has been adopted in six jurisdictions.[4]

Recognition of the prevailing trend, however, is not dispositive of this case. It is also necessary to consider the reasons underlying the decisions. In so doing, it is important to distinguish between, on the one hand, situations where a person simply uses self-help to recover a specific chattel to which he has the right to immediate possession, and, on the other hand, situations where a person attempts to collect a debt out of another's money, with no pretense of ownership rights in the specific coins and bills. As to the former situation, *State v. Luckey,* 150 Or 566, 46 P2d 1042 (1935),

---

[3] Richardson v. United States, 403 F2d 574 (DC Cir 1968); People v. Butler, 65 Cal 2d 569, 55 Cal Rptr 511, 421 P2d 703 (1967).

[4] People v. Uselding, 107 Ill App 2d 305, 247 NE2d 35 (1969); State v. Pierce, 208 Kan 19, 490 P2d 584 (1971); State v. Ortiz, 124 NJ Super 189, 305 A2d 800 (1973); Elliott v. State, 2 Tenn Crim 418, 454 SW2d 187 (1970); Frazier v. State, 170 Tex Crim 432, 342 SW2d 115 (1961); Edwards v. State, 49 Wis 2d 105, 181 NW2d 383 (1970).

holds that intent to steal is absent when a person re-takes wrongfully held specific personal property to which he has the right to possession. Similarly, ORS 164.035 (1) (b), created by the 1971 Oregon Criminal Code, provides that it is a defense to a prosecution for theft if the defendant "reasonably believed that he was entitled to the property involved or had a right to acquire or dispose of it as he did." The cases cited in the commentary of the Criminal Law Review Commission demonstrate that that subsection was intended as a codification of the *Luckey* line of cases.[9]

But where, as here, the claim is to money owed, and in order to satisfy the claim, the creditor takes money or other fungible property to which he has no title or right of possession, then the intent to steal is present. Only if the defendant herein had ownership rights in specific coins and bills in Barley's possession would the principle of *State v. Luckey,* supra, be applicable. Here, there was no assertion of such an ownership right; the defendant was attempting to satisfy his alleged claim at gunpoint from whatever cash Barley might have had on his person.

The distinction between reclaiming specific personal property and taking undifferentiated money from a debtor to repay a debt has been pointed out by the Wisconsin Supreme Court in *Edwards v. State,* supra, 49 Wis 2d at 113-114:

> "The distinction between specific personal property and money in general is important. A debtor can owe another $150 but the $150 in the debtor's pocket is not the specific property of the creditor.

---

[9] While such self-help to recover specific personal property might not constitute robbery, it would normally constitute a lesser crime, such as menacing, ORS 163.190, or harassment, ORS 166.065.

One has the intention to steal when he takes money from another's possession against the possessor's consent even though he also intends to apply the stolen money to a debt. The efficacy of self-help by force to enforce a bona fide claim for money does not negate the intent to commit robbery. Can one break into a bank and take money so long as he does not take more than the balance in his savings or checking account? Under the majority rule the accused must make change to be sure he collects no more than the amount he believes is due him on the debt. A debt is a relationship and in respect to money seldom finds itself embedded in specific coins and currency of the realm. Consequently, taking money from a debtor by force to pay a debt is robbery. The creditor has no such right of appropriation and allocation."

*See also Moyers v. State,* 186 Ga 446, 197 SE 846, 116 ALR 981 (1938); *State v. Pierce,* 208 Kan 19, 490 P2d 584 (1971); *Edwards v. State,* 49 Wis 2d 105, 181 NW2d 383 (1970).

In addition to the above considerations, a holding that debt collection at gunpoint is not proscribed by the robbery statutes would be inconsistent with the spirit of the Oregon Criminal Code, one of the purposes of which is "[t]o forbid and prevent conduct that unjustifiably and inexcusably inflicts or threatens substantial harm to individual or public interests." ORS 161.025 (1)(b). The public interest in peaceful resolution of debtor-creditor disputes has been articulated in numerous statutes[1] and judicial opinions.[2] Typical of

---

[1] *See,* e.g., ORS 79.5030, which provides that a creditor holding a nonpossessory security interest in collateral may take possession of the collateral by means of self-help upon default only "if this can be done without breach of the peace."

[2] *See* Moyers v. State, supra; People v. Uselding, supra; State v. Ortiz, supra; Elliott v. State, supra.

these statements is the view of the New Jersey Superior Court:

> "In our view, the proposition not only is lacking in sound reason and logic, but it is utterly incompatible with and has no place in an ordered and orderly society such as ours, which eschews self-help through violence. Adoption of the proposition would be but one step short of accepting lawless reprisal as an appropriate means of redressing grievances, real or fancied. We reject it out of hand." *State v. Ortiz,* supra, 305 A2d at 802.

We agree. Had the legislature intended to make forcible debt collection an exception to the robbery statutes, it could have done so. In the face of legislative silence on the subject, we are not disposed to attribute to the legislature an intent so incongruous with the requirements of public order and safety.

■ For the above reasons, we conclude that the dicta in *State v. Trujillo,* supra, was ill-advised, and we expressly hold that a creditor's intent to collect a debt from his debtor by force is not a defense to a charge of robbery.

■ Defendant's other assignment of error can be dealt with summarily. One of the officers who investigated the incident testified as part of the state's case that defendant told him that he had not been at the scene of the robbery. When defendant took the stand in his own behalf, his attorney asked him why he had lied to the police, and defendant stated: "Well, I was scared. I mean, I was very, very shook up, and afraid." During cross-examination of the defendant by the prosecutor, the following exchange took place:

> "Q And when the policy [sic] confronted you why did you lie to them again?
> "A I was afraid. The first incident that I had ever been involved in.

"Q   The very first?
"A   Like this.

"Q   The very first?
"A   Yes, sir, it is.

"Q   You familiar with the town named Roy, Washington?
"A   Yes, I am."

The prosecutor then asked defendant whether he had been shot at outside a tavern in Roy, Washington, and whether the police had investigated that incident. The questions were allowed over objections by defense counsel, and defendant testified that the incident occurred and that the police had investigated it.

Defendant contends that this line of questioning was irrelevant and served only to blacken his character. However, there was no suggestion that defendant was the aggressor in the Washington incident, and indeed, the prosecutor made it clear that defendant was the victim of the shooting. The sole purpose of the line of questioning was to attack defendant's credibility, which was put at issue when defendant took the stand. Defendant had testified that he lied to the police because he had never been involved in such an incident and he was therefore shaken up. It was within its discretionary control over cross-examination for the trial court to allow the state to cast doubt upon this explanation by showing, for what it was worth, that he had been exposed to another traumatic experience involving gunplay in the past. *Cf. State v. Steward,* 9 Or App 35, 41, 496 P2d 40, Sup Ct *review denied* (1972).

Affirmed.