[No. 11771–8–I.   Division One.   December 14, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. BOBBY LEE HICKS, *Appellant.*

*Bobby Lee Hicks,* pro se, and *Paris K. Kallas* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ruth Robinson, Deputy,* for respondent.

CORBETT, J.—Defendant, Bobby Lee Hicks, appeals his judgment and sentence entered after a jury verdict finding him guilty of second degree robbery.

Defendant and the victim resided in the same hotel on Third Avenue in Seattle. On January 8, 1982, the victim withdrew $1,176 from the bank. He returned to the hotel and paid $170 rent and then went to a restaurant. When the victim returned to the hotel, he accompanied the defendant, an acquaintance, to his room where they engaged in conversation. The victim testified that the defendant asked him to go buy a Coke. Before leaving the room, the victim observed some 1–dollar and 5–dollar bills partially hidden under a pillow on the bed. When he returned, the money was gone. He testified that the defendant accused him of taking the money, grabbed him by the throat, pushed him down on the bed and took cash, totaling approximately $1,000, from his pocket, threatening to kill him. The victim testified further that the defendant began to count the victim's money and gave the victim several 1–dollar bills and a 5–dollar bill. Defendant then left the room, followed by the victim, who asked the desk clerk to call the police. Another resident of the hotel, who did not know either the victim or the defendant, testified that he overheard voices coming from the defendant's room:

I heard one voice, 'give me my money back, Bobby. You are robbing me, man. This is my life savings, this is all that I got. Please give me my money back. You know, I can't beat you, but please give me my money back.'

Defendant testified that he had taken the money from the victim in the mistaken belief that the victim had previously taken a sum of money from a desk in the defendant's room. According to the defendant, it was not until several hours after the encounter that he remembered having already sent the money in his room to his children. Defendant testified that upon realizing his mistake he returned to the hotel, intending to return the victim's money, but was arrested before he could do so. At the time of his arrest at approximately 3:30 in the morning following the encounter with the victim, the defendant had $737 in currency on his person. He told the investigating detective that he knew the victim but did not take any money from him.

The defense theory of the case was a good faith claim of title. Defendant requested the following instruction, based upon RCW 9A.56.020(2):

> In any prosecution for theft, it shall be a sufficient defense that the property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable.

Defendant contends that he was unable to argue this theory without the statutory definition of the defense.

■ An accused is entitled to this defense only when the claim of title can be made to specific property. *State v. Larsen,* 23 Wn. App. 218, 219, 596 P.2d 1089 (1979). The defense is available where, *e.g.,* an owner of property observes a thief carrying it away and retakes it by force. *State v. Larsen, supra* at 219. Cited with approval in the *Larsen* decision at page 219 was *State v. Martin,* 15 Or. App. 498, 516 P.2d 753, 755 (1973), in which the court distinguished between

> situations where a person simply uses self–help to recover a specific chattel to which he has the right to immediate

possession, and . . . situations where a person attempts to collect a debt out of another's money, with no pretense of ownership rights in the specific coins and bills.

The defense, then, has reference to specific property and does not apply to situations in which the accused attempts to satisfy an alleged claim, whether made in good faith or not, from whatever cash the victim might have on his person. *See State v. Steele,* 150 Wash. 466, 468, 273 P. 742 (1929) (money and a watch thrown into the pot during a dice game); *State v. Crossen,* 77 Wash. 438, 438–39, 137 P. 1030 (1914) (one head of cattle); *State v. Williams,* 22 Wn. App. 197, 198, 588 P.2d 1201 (1978) (motor vehicle).

Defendant did not testify that he believed the money he took from the victim's pocket consisted of the specific bills thought to have earlier been taken from his room. Since there was no evidence identifying the currency taken from the victim with the currency to which the defendant asserted a good faith claim of title, the statutory defense was not available to him, and the failure to give the instruction embodying it was not error. *State v. Larsen, supra* at 219.

Defendant, relying on *State v. McCullum,* 98 Wn.2d 484, 490, 656 P.2d 1064 (1983), argues that the defense of a good faith claim of title negates the intent element of robbery, and thus the State had the burden of proving the nonexistence of the defense beyond a reasonable doubt. Because the defense was unavailable to the defendant in this case, we do not reach the question of whether the *McCullum* analysis would in fact produce the result urged by the defendant. It is true that *McCullum* required only "some evidence" of self–defense in order to make the absence of self–defense another element of the offense which the State must prove beyond a reasonable doubt. *McCullum,* at 497. The issue of self–defense, however, must be "*properly* raised." *McCullum,* at 493 (italics ours). Turning to the instant case, it is clear that the evidence purporting to establish a good faith claim of title did not rise to the level of a legally sufficient defense. *See State v. Larsen, supra* at 219. Because the

defense was wholly inapplicable, no burden was on the defendant to prove, or the State to disprove, a good faith claim of title to the money taken.

In his pro se brief, the defendant claims that the victim should not have been permitted to testify because he was incompetent. The question of competency was raised before the trial judge, who examined the victim and found him to be competent. The competency of a witness to testify is within the broad discretion of the trial judge, whose ruling will not be overturned absent manifest abuse. *State v. Smith,* 97 Wn.2d 801, 803, 650 P.2d 201 (1982). We find no abuse of discretion.

Defendant also argues in his pro se brief that the statement he gave to the arresting officer was not accurate because he had just been awakened when the statement was made. This would go to the weight of the testimony and not its admissibility. If the defendant intended to raise a question as to the voluntariness and admissibility of the statement, the issue should have been presented at a CrR 3.5 hearing, which was waived by the defendant, or raised at the time of trial so that the trial judge would have an opportunity to rule upon the question. In this ambiguous posture, we will not consider the matter for the first time on appeal. *Wilson v. Steinbach,* 98 Wn.2d 434, 440, 656 P.2d 1030 (1982).

Affirmed.

SWANSON and CALLOW, JJ., concur.

Review granted by Supreme Court February 17, 1984.