[No. 50211–1.   En Banc.   June 28, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. BOBBY LEE HICKS, *Petitioner.*

*Bobby Lee Hicks,* pro se, and *Paris K. Kallas* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Ruth A. Robinson, Deputy,* for respondent.

DORE, J.—Bobby Lee Hicks appeals his conviction of second degree robbery. We hold that the trial court's refusal to instruct on the good faith claim of title defense was prejudicial error and remand for a new trial.

## FACTS

Hicks and the victim, Joseph Stills, were lifelong friends and, at the time of the incident, resided in the same hotel in downtown Seattle. The two men were ex–boxers and evidence at trial suggested they were both slightly punch–drunk. On January 8, 1982, Stills withdrew $1,176.20 from his bank account. He returned to the hotel, paid his rent, and encountered Hicks in the lobby. It was undisputed that Hicks took money from Stills, but the men offered different versions of the facts surrounding the incident.

At the time of trial, Stills was receiving psychiatric treatment at the Veterans Administration Medical Center at American Lake in Tacoma. At a preliminary hearing, Stills admitted he occasionally lost touch with reality, although he stated that 90 percent of the time he was aware when he was out of touch. The trial court ruled he was competent to testify as a witness. Stills testified that he and Hicks went to Hicks' room. Stills stated that, during the course of the conversation, Hicks gave him 50 cents to go downstairs and buy a Coke. On his way out, Stills saw some cash under

Hicks' pillow. When he returned, the money under the pillow was gone. Hicks accused Stills of taking the money. According to Stills, Hicks then forcibly reached into Stills' pocket and took the remainder of the cash he had withdrawn from the bank.

Hicks offered a different version. He had been working at the shipyards for several months and was saving his money to send to his children for the purchase of a stereo. The day before the incident, Hicks discovered a large sum of money—$600 to $700—to be missing from the table in his room. Because Stills was the only person who frequented his room, he suspected Stills. Hicks testified he went to Stills' room and confronted him about the missing money. When Stills displayed cash, Hicks grabbed it, believing it to be his own money. Hicks said he subsequently remembered that he had previously sent $600 to his children, but that he was arrested before he had a chance to rectify the mistake and return Stills' money.

The trial court refused to give defendant's proposed instruction derived from RCW 9A.56.020(2):

> In any prosecution for theft, it shall be a sufficient defense that the property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable.

Clerk's Papers, at 19.

### DECISION

■■ "Animus furandi", or the intent to steal, is an essential element of the crime of robbery. *State v. Steele*, 150 Wash. 466, 273 P. 742 (1929). A person cannot be guilty of robbery in forcibly taking property from another if he does so under the good faith belief that he is the owner, or entitled to the possession, of the property. This good faith belief negates the requisite intent to steal. *See generally* 67 Am. Jur. 2d *Robbery* § 817 (1973); *State v. Steele, supra.*

Hicks contends he lacked the requisite intent to commit robbery because he took the money under a good faith belief that he was recovering his own money. The Court of

Appeals held the good faith defense was not available to Hicks because there was no evidence identifying the currency taken from Stills with the currency to which defendant asserted a good faith claim of title. *State v. Hicks,* 36 Wn. App. 244, 247, 673 P.2d 205 (1983).

The appellate court relied on *State v. Larsen,* 23 Wn. App. 218, 596 P.2d 1089 (1979). In *Larsen,* the court affirmed a robbery conviction, holding that there was no statutory or common law authority for collecting a debt by force. *Larsen* relied on *State v. Martin,* 15 Or. App. 498, 516 P.2d 753 (1973), which also involved a debt collection situation. The Oregon court distinguished between reclaiming specific personal property and taking undifferentiated money from a debtor to repay a debt:

> "The distinction between specific personal property and money in general is important. A debtor can owe another $150 but the $150 in the debtor's pocket is not the specific property of the creditor. One has the intention to steal when he takes money from another's possession against the possessor's consent even though he also intends to apply the stolen money to a debt. The efficacy of self–help by force to enforce a bona fide claim for money does not negate the intent to commit robbery. Can one break into a bank and take money so long as he does not take more than the balance in his savings or checking account? Under the majority rule the accused must make change to be sure he collects no more than the amount he believes is due him on the debt. A debt is a relationship and in respect to money seldom finds itself embedded in specific coins and currency of the realm. Consequently, taking money from a debtor by force to pay a debt is robbery. The creditor has no such right of appropriation and allocation."

*State v. Martin, supra* at 503–04 (quoting *Edwards v. State,* 49 Wis. 2d 105, 113–14, 181 N.W.2d 383 (1970)); *see generally* Annot., *Robbery, Attempted Robbery, or Assault To Commit Robbery, as Affected by Intent To Collect or Secure Debt or Claim,* 88 A.L.R.3d 1309 (1978).

The testimony of Hicks poses a different factual scenario from the debt collection cases before the courts in

*State v. Larsen, supra,* and *State v. Martin, supra.* He testified that he believed the money to have been the specific property he thought Stills had stolen from him the day before.

This case is factually similar to *State v. Steele, supra.* In *Steele,* the defendants were convicted of robbery after taking money from three men in a Seattle apartment house. The defendants testified at trial that they had won the money allegedly stolen in a dice game. While the defendants gathered their winnings the other men interfered. Defendants then drew revolvers to protect their winnings. The trial court refused to instruct the jury that if the property was taken under the circumstances described by the defendants, in the honest belief they were entitled to the money, the jury could not convict defendants of robbery. This court reversed the conviction and stated:

> In our opinion the court committed error in failing so to do. It is fundamental, of course, that a defendant on trial for crime is entitled to have his version of the transactions thought to constitute the crime given to the jury, if such version tends to disprove his guilt. In robbery, as in larceny, it is essential that the taking be with a felonious intent, and unless it is so taken, the act of taking is not robbery.

*Steele,* at 473.

The determinative issue is whether there was evidence to support an instruction on the good faith claim of title defense. *State v. Theroff,* 95 Wn.2d 385, 622 P.2d 1240 (1980).

RCW 9A.56.020(2) provides a complete defense to a robbery charge when a defendant takes property openly under a good faith claim of title. The jury was not instructed that defendant's good faith claim of title was a critical factor to be considered in determining guilt or innocence. *State v. Jones,* 95 Wn.2d 616, 628 P.2d 472 (1981).

Erroneous instructions given on behalf of the party in whose favor the verdict is returned are presumed prejudicial unless it affirmatively appears they were harmless.

*State v. Wanrow,* 88 Wn.2d 221, 237, 559 P.2d 548 (1977). We have applied the "contribution test" and the "overwhelming evidence test" to determine whether instructional errors are harmless. *See State v. Belmarez,* 101 Wn.2d 212, 676 P.2d 492 (1984); *State v. Johnson,* 100 Wn.2d 607, 674 P.2d 145 (1983). Under either of these tests, we hold that the failure to instruct on the statutory defense was prejudicial error. Had the jury been properly instructed, they may have believed Hicks' testimony that he took the money under a good faith belief that it was his own. Moreover, the evidence at trial consisted of conflicting versions of the incident as related by the victim and the defendant.

Defendant, relying on *State v. McCullum,* 98 Wn.2d 484, 656 P.2d 1064 (1983), also argues that the good faith claim of title defense negates the intent element of robbery. He contends the State should have had the burden of proving the nonexistence of the defense beyond a reasonable doubt. We agree. If an element of the defense negates an element of the offense, the prosecution must prove the absence of the defense beyond a reasonable doubt. *McCullum,* at 490. The theory of the good faith claim of title defense is that the accused lacked the "animus furandi", or requisite intent to steal. *State v. Steele, supra; accord, State v. Winston,* 295 S.E.2d 46 (W. Va. 1982). On retrial, the jury should be instructed that the State bears the burden of proving the absence of this defense beyond a reasonable doubt.

## Conclusion

We reverse and remand to the trial court for a new trial in accordance with the provisions of this opinion.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DIMMICK, J., concurs in the result.