# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 69293-3-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ROBERT RALPH BERG, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 21, 2014 |
| | ) | |

DWYER, J. — Robert Berg appeals the judgment entered on his conviction for one count of robbery in the second degree. Berg contends that his counsel rendered ineffective assistance by failing to request a jury instruction on the defense of good faith claim of title. In his statement of additional grounds, Berg further contends that his counsel rendered ineffective assistance by failing to object to his improper sentence. Finding no deficiency in defense counsel's performance, we affirm.

I

On July 29, 2011, Berg and his fiancé, Jeanette Conger, went to North Park Grocery on Aurora Avenue North in Seattle to obtain beer. Conger, who was driving Berg's brother's vehicle, parked on the street in front of the store and waited there while Berg went inside. Chaesun Osaka, owner of North Park

Grocery, was working alone in the store that day. Osaka recognized Berg from his prior visits to the store, although she had not seen him recently. Osaka greeted Berg, but he did not respond. Instead, Berg briefly looked around, then walked to the cooler where the beer was stored. Berg removed two cases[1] of beer from the cooler. Osaka moved toward the register in expectation that Berg would approach her to pay for the beer. Rather than approaching the register, however, Berg simply walked out of the store with one case in each hand. Osaka yelled at Berg and followed him outside.

Once outside, Osaka grabbed Berg, attempting to retrieve the beer. Berg struck Osaka, causing minor injuries to her finger and tooth, and dropped one case of beer in the process. After Conger yelled at Berg to get in the car, Berg entered the passenger's side of the vehicle through an already open door. Conger then drove away from the store. James and Kristine Hunter, who were traveling southbound on Aurora Avenue, witnessed the altercation and informed police about the incident.

The State charged Berg with one count of robbery in the second degree. On July 23, 2012, the case went before a jury. At trial, Berg testified on his own behalf.[2] Berg testified that three days prior to the incident, Berg had struck a bartering agreement with an elderly Asian man at North Park Grocery. Pursuant to the agreement, Berg obtained beer and tobacco in exchange for two commemorative gold coins, which were to be held as collateral until Berg could

---

[1] Witnesses refer to the packages of beer as "cases," "half racks," and "packs." The exact nature of the packaging is not relevant to the issues on appeal.

[2] Conger also testified for Berg.

- 2 -

No. 69293-3-I/3

pay for the items. Berg testified that on July 29, 2011, he placed two commemorative gold coins on the counter before removing the beer from the cooler. Osaka, however, testified that Berg did not give her any gold coins and that no elderly Asian man had ever worked at her store.

Defense counsel proposed a jury instruction on lawful force in defense of property, but not an instruction on good faith claim of title. The trial court gave the following pertinent instructions to the jury:

> A person commits the crime of robbery in the second degree when he or she unlawfully and with intent to commit theft thereof takes personal property from the person or in the presence of another, against that person's will by the use or threatened use of immediate force, violence, or fear of injury to that person or to that person's property. The force or fear must be used to obtain or retain possession of the property or to prevent or overcome resistance to the taking, in either of which cases the degree of force is immaterial.

Jury Instruction 5.

> A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result that constitutes a crime.

Jury Instruction 6.

> Theft means to wrongfully obtain or exert unauthorized control over the property or services of another, or the value thereof, with intent to deprive that person of such property or services.

Jury Instruction 7.

> To convict the defendant of the crime of robbery in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about July 29, 2011, the defendant unlawfully took personal property from the person or in the presence of another;
> (2) That the defendant intended to commit theft of the

- 3 -

property;
        (3) That the taking was against the person's will by the defendant's use or threatened use of immediate force, violence or fear of injury to that person or to that person's property;
        (4) That force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking; and
        (5) That the acts occurred in the State of Washington.

Jury Instruction 9.

        It is a defense to a charge of robbery in the second degree that the force used was lawful as defined in this instruction.
        The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured in preventing or attempting to prevent a malicious trespass or other malicious interference with real or personal property lawfully in that person's possession, and when the force is not more than is necessary.

Jury Instruction 10. The jury found Berg guilty as charged.

The trial court entered judgment on August 29, 2012. The State and defense counsel both calculated Berg's offender score as 3. Berg disagreed and contended that his offender score should be 0. Berg asserted that because he had been crime free for a 10-year period, all of his old convictions washed out. Defense counsel pointed out, however, that Berg had misdemeanor convictions within the last 10 years that would prevent two offenses from washing out. The trial court held that under the Sentencing Reform Act of 1981,[3] misdemeanor convictions prevent pre-1984 convictions from washing out. As Berg had been previously convicted of burglary in the second degree in 1976, assault in the second degree in 1978, and escape in the first degree in 1979, the trial court

---

[3] Ch. 9.94A RCW.

- 4 -

calculated Berg's offender score to be 3.[4] The trial court sentenced Berg to 14 months in prison, plus 18 months of community custody for having committed a violent offense.

Berg appeals.

II

Berg contends that his trial counsel rendered ineffective assistance by not requesting a jury instruction on the defense of good faith claim of title. We disagree.

In order to establish ineffective assistance of counsel, the defendant must establish both that his attorney's performance was deficient and that the deficiency prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Hendrickson, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). "Where the claim of ineffective assistance is based upon counsel's failure to request a particular jury instruction, the defendant must show he was entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice." State v. Thompson, 169 Wn. App. 436, 495, 290 P.3d 996 (2012) (citing State v. Johnston, 143 Wn. App. 1, 21, 177 P.3d 1127 (2007)). Deficient performance is performance falling "below an objective standard of reasonableness based on consideration of all the circumstances." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). There is a strong

---

[4] The trial court counted the burglary in the second degree and assault in the second degree as one offense.

presumption that defense counsel's performance was reasonable. State v. Weaville, 162 Wn. App. 801, 823, 256 P.3d 426 (2011). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. Accordingly, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689.

Here, defense counsel was not ineffective in not proposing a jury instruction on good faith claim of title.[5] Berg's theory of the case was that he had paid for the beer with commemorative gold coins before he left the store. In order for Berg to be found guilty of robbery in the second degree, the State had to prove that he "unlawfully took personal property from the person or in the presence of another" and that he "intended to commit theft of the property." Jury Instruction 9. If the jury found that Berg had paid for the beer, then it could not find that he had the intent to commit theft. Thus, the jury could not, in that circumstance, find him guilty. Moreover, as the instruction proposed by counsel and given by the trial court articulates, the jury could not have found Berg guilty of robbery in the second degree if his use of force against Osaka had been a

_____

[5] The pattern jury instruction on good faith claim of title reads as follows:
It is a defense to a charge of theft that the property or service was appropriated openly and avowedly under a good faith claim of title, even if the claim is untenable.
The [State] [City] [County] has the burden of proving beyond a reasonable doubt that the defendant did not appropriate the property openly and avowedly under a good faith claim of title. If you find that the [State] [City] [County] has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty [as to this charge].
11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 19.08, at 319 (3d ed. 2008).

reasonable attempt to "prevent a malicious trespass . . . with . . . personal property *lawfully in that person's possession*." Jury Instruction 10 (emphasis added). Berg's defense that he had paid for the beer with commemorative gold coins was thus covered by the jury instructions on the elements of robbery in the second degree and on the affirmative defense of the use of force in the protection of property. Any instruction on good faith claim of title would have been duplicative and unnecessary. Therefore, defense counsel's performance was not deficient in failing to request such an instruction.

Moreover, "[w]here defense counsel's conduct can be characterized as a legitimate trial strategy or tactic, it does not constitute deficient performance." Weaville, 162 Wn. App. at 823. By not requesting a jury instruction on good faith claim of title, defense counsel did not need to argue good faith on Berg's part. Such an argument would have been difficult to sustain, given that Osaka clearly objected to Berg taking the beer. Osaka's actions were inconsistent with the existence of an agreement with Berg. Berg's retention of the beer, in the face of the store owner's energetic objection, would be difficult to justify to the jury on the basis of a good faith claim of title. Instead, defense counsel was able to argue mere belief on Berg's part. As previously noted, if the jury had accepted this theory, the intent element of robbery in the second degree would be lacking and the jury could not have found Berg guilty. Arguing belief instead of good faith belief was a legitimate trial tactic, and defense counsel cannot be deemed deficient for having argued Berg's case in this manner.

Finally, we note that the testimony in this case would not support the

issuance of the requested instruction.

> Intent to steal is an essential element of the crime of robbery. State v. Hicks, 102 Wn.2d 182, 683, P.2d 186 (1984); State v. Steele, 150 Wash. 466, 273 P. 742 (1929). Therefore, a person cannot be guilty of robbery in forcibly taking property from another if he does so under the good faith belief that he is the owner, or entitled to possession of the property. This good faith belief negates the requisite intent to steal. State v. Steele, supra.
>
> However, the defense of good faith claim of title is available only where self-help is used to recover *specific* property. State v. Brown, 36 Wn. App. 549, 676 P.2d 525, review denied, 101 Wn.2d 1024 (1984). Thus, where a person uses force to collect a debt with no claim of ownership in the specific property acquired, the requisite intent to steal is present and the defense is unavailable. State v. Larsen, 23 Wn. App. 218, 596 P.2d 1089 (1979); State v. Brown, supra.

State v. Self, 42 Wn. App. 654, 657, 713 P.2d 142 (1986) (emphasis in original).

Here, Berg did not testify that he had an ownership interest in the beer prior to going to the store. As discussed in Self:

> Here, the record is totally devoid of any evidence that Self or Lewis [Self's cohort] had a claim of title to the specific cash, wallet, keys, credit cards and other property that were taken by force. . . . [T]he defense is *not* available when a debt is unliquidated.

42 Wn. App. at 657 (emphasis in original).

Thus, Berg's counsel's decision not to seek an instruction on good faith claim of title likely resulted from his determination that the facts of the case did not warrant one and his tactical decision not to make an improper request of the court.

As Berg fails to demonstrate any deficient performance on defense counsel's behalf, we need not reach the issue of prejudice. See Hendrickson, 129 Wn.2d at 78 ("If either part of the test is not satisfied, the inquiry need go no

further.")

III

In his statement of additional grounds, Berg contends that defense counsel rendered ineffective assistance by failing to object to Berg's improper sentence. This is so, Berg contends, because (1) the term of his parole violates the Sentencing Reform Act of 1981, (2) defense counsel ignored the holding in State v. Chavez, 52 Wn. App. 796, 764 P.2d 659 (1988), after Berg brought the case to his attention, (3) Berg's conviction in 1994 for assault should not have been used to calculate his offender score, and (4) the condition that he is not to leave the county is only applicable to parolees with prior sexual offenses, which Berg does not have. All of Berg's arguments lack merit.

Berg contends, first, that defense counsel was ineffective for failing to object to a term of parole that violates the Sentencing Reform Act of 1981. This is so, he asserts, because 18 months of community custody is longer than authorized by statute. RCW 9.94A.701(2) mandates that the court "shall, in addition to the other terms of the sentence, sentence an offender to community custody for eighteen months when the court sentences the person to the custody of the department for a violent offense that is not considered a serious violent offense." Robbery in the second degree is a violent offense that is not considered a serious violent offense. RCW 9.94A.030(45), (54). The trial court imposed the proper term of community custody. There was no error.

Berg next contends that defense counsel was ineffective for not relying on Chavez after Berg informed counsel of the case. Chavez was explicitly overruled

- 9 -

by our Supreme Court in In re Pers. Restraint of Sietz, 124 Wn.2d 645, 650, 880 P.2d 34 (1994). Defense counsel was not ineffective for declining to rely on a case that had been overruled.

Third, Berg contends that defense counsel was ineffective for failing to object to inclusion of an assault conviction from 1994 in calculating his offender score. The record reveals that the trial court did not include any convictions from 1994 in calculating Berg's offender score. Rather, the trial court, in its calculation of Berg's offender score, relied on the following convictions: burglary in the second degree from 1976, assault in the second degree from 1978, and escape in the first degree from 1979. The error asserted by Berg, did not, in fact, occur. As Berg was not improperly sentenced, defense counsel had no grounds to object and thus did not render ineffective assistance by not doing so.

Finally, Berg asserts that he should not have been subjected to the condition that he is not to leave the county, as such a condition is only applicable to persons with prior sexual offenses. The record does not provide us with a basis to review this contention. The terms of community custody imposed by the trial court state that Berg is to "[r]emain within geographic boundaries, as set forth in writing by the Department of Corrections Officer or as set forth with SODA order." No writing is included in the record that indicates what, if any, geographic boundaries have been set by the Department of Corrections. As such, we cannot review whether Berg's sentence was improper on this basis nor whether defense counsel was ineffective for failing to object.

Affirmed.

_____

We concur:

_____                    _____