IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73812-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| LAURA MARIE BEEBE, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 28, 2016 |

SCHINDLER, J. — Laura Marie Beebe appeals the jury conviction for theft in the first degree. Beebe asserts the State did not disprove her good faith claim of title defense beyond a reasonable doubt. Beebe also asserts a jury instruction constitutes an impermissible comment on the evidence. Because substantial evidence supports the jury finding Beebe did not act under a good faith claim of title and the jury instruction is not a comment on the evidence, we affirm.

FACTS

In 2013, Robert "Tony" Brown and his spouse Connie Brown lived in a rented house in Seattle with their two children, two Chihuahuas, and three cats. In October 2013, Connie's adult daughter Laura Marie Beebe, Beebe's daughter, and her

animals—a cat, a Chihuahua, and a black Labrador moved into the house with Tony and Connie.[1]

In late December 2013 or early January 2014, the landlord told Tony and Connie that Beebe and her daughter needed to move out with their pets. Beebe moved out with her daughter and the Chihuahua. Beebe decided to leave the Labrador with Connie and Tony because "she couldn't take care of him at the time."[2] The day Beebe moved out, Tony asked her to take the Labrador with her. Beebe ignored Tony's request.

After Beebe moved out, she frequently communicated with Connie through Facebook and by cell phone, and Beebe stopped by the house a few times.

In March, the landlord told Tony that because they already had two dogs and several cats, they could not keep the Labrador at the house. Tony was also concerned about keeping the Labrador at the house because the dog was not housebroken.

On March 11, Connie sent Beebe a message on Facebook telling her that Tony planned to take the Labrador to an animal shelter the next day. Beebe asked for "a little more time" and asked Connie to take care of the dog "a little bit longer." Connie told Beebe she "would try."

On March 13, Tony and Connie took the dog to the City of Seattle Animal Shelter (Shelter). Connie told the Shelter they had been taking care of the dog for her daughter "but our landlord said we couldn't take care of him no more so we wanted to surrender him." Connie did not know where Beebe was living but gave the Shelter Beebe's cell phone number. Connie asked the Shelter to call Beebe to come get the dog. After they

---

[1] We refer to Tony Brown and Connie Brown by their first names for purposes of clarity.

[2] Beebe also left her cat.

2

left the dog at the Shelter, Connie sent Beebe a text message telling her they had taken the dog to the Shelter and provided the address and telephone number of the Shelter. Beebe did not respond.

The Shelter called Beebe's cell phone number and left a message about the dog. The surrender form contains the correct cell phone number for Beebe, but the cell phone number was incorrectly entered in the Shelter electronic records. But the Shelter manager testified the staff would have used the number on the surrender form to call and leave a message for Beebe.

A surrendered dog is immediately eligible for adoption. But because Tony and Connie were not the owners, the Shelter treated the Labrador as if he were a stray with identification and held him for more than six days before he was eligible for adoption.

On March 27, Carmella Patterson adopted the Labrador from the Shelter. Patterson completed the required paperwork, purchased a pet license, and enrolled the dog in a training program for certification as an emotional support animal. Patterson also contacted the microchip company, 24PetWatch Pet Protection Services (PetWatch), to register as the dog's new owner.

Connie did not hear from Beebe until mid-April. On April 19, Beebe sent Connie a Facebook message asking, "[W]here's [the dog]"? Connie gave Beebe the Shelter address and phone number. Beebe testified she thought Tony had abandoned the dog instead of taking him to the Shelter so she began looking for her "lost" dog through Facebook postings and lost pet websites.

3

On June 23, Patterson completed the registration for PetWatch. PetWatch notified Beebe that the dog's "new owner" had contacted them. Beebe asked PetWatch to have the new owner call her.

Patterson immediately called Beebe. Beebe told Patterson the dog was taken to the Shelter without her permission and she wanted the dog back. Patterson made clear she wanted to keep the dog. Beebe started "screaming" at Patterson but eventually agreed to contact the Shelter. After talking to Patterson, Beebe "immediately did a reverse lookup of her phone number" and was able to obtain her home address.

Over the next couple of days, Beebe made several Facebook posts about the ownership dispute with Patterson. On June 24, Beebe posted that PetWatch told her the Shelter would need to resolve the ownership dispute. Beebe says that is "unsatisfactory" and "[t]he gangsta in me has been planning my final heist." In another Facebook post, Beebe says a coworker told her that if Patterson is unwilling to relinquish the dog, Beebe will "have to take her to court." Beebe posts, "Fuck this shit. He's mine. I looked her address up and mapped it."

On June 25, Beebe posted on Facebook that she was waiting to hear back from the Shelter and if "this gets dragged out too long," she would "play the asshole & take him back."

On June 26, 2014, Beebe went to the Shelter. The Shelter manager told Beebe he could not force Patterson to relinquish the dog and the Shelter does not rescind an adoption "if there is an ownership dispute." Afterward, Beebe posted on Facebook, "Time to play my trump card." Beebe then drove to Patterson's home.

4

Beebe parked the car down the street out of sight of Patterson's home. At approximately 3:30 p.m., Patterson returned home with the dog after visiting her husband at the nursing home. As Patterson got out of the car with the dog, she wrapped the leash around her hand. Beebe walked up, unhooked the leash from the dog's harness, grabbed the dog by the harness, and ran away screaming that he was her dog. Patterson called 911.

On June 27, Beebe posted on Facebook that she had taken the dog from Patterson. "All the shelter & microchip company seemed to want to do is play the blame game. . . . So I just took him from the lady." Beebe posted a photo of the dog in the backseat of her car on Facebook and stated, "Family is FUREVER bitchezzz!!! Sorry about your luck but I don't take no for an answer." Beebe stated she was " '[n]ot going to . . . beat myself up for standing my ground and fighting for my dog.' "

The police could not locate Beebe. Seattle Police Detective David Simmons used the telephone number that Patterson gave him and left several voice messages on Beebe's cell phone. Beebe did not return the phone calls.

On July 14, Detective Simmons called the number again. The woman who answered the phone denied she was Laura Beebe. After Detective Simmons told the woman that someone named "Laura Beebe" called 911 from the same phone number in February, the speaker admitted she was Laura Beebe. Detective Simmons said he was calling about taking the dog from Patterson. Beebe "started screaming" at Detective Simmons and hung up. Detective Simmons called back and attempted to tell Beebe the dispute needed to be resolved in court and she needed to return the dog to Patterson. Beebe continued to talk over Detective Simmons and hung up.

5

On September 30, 2014, the State charged Beebe with theft in the first degree.

> [T]he defendant LAURA MARIE BEEBE in King County, Washington, on or about June 26, 2014, with intent to deprive another of property, to-wit: dog, did wrongfully obtain such property by taking it from the person of Carmella Patterson.[3]

Beebe asserted a good faith claim of title to the dog. A number of witnesses testified at trial including Tony, Connie, Shelter Manager Don Baxter, Patterson, Detective Simmons, and Beebe.

Beebe admitted taking the dog but testified the dog belonged to her. Beebe denied knowing Connie and Tony took the dog to the Shelter. Beebe said the first time she knew the dog was at the Shelter was on April 19, 2014. Beebe admitted she knew Patterson had adopted the dog and cared for him for several months but claimed online research supported her belief that she was entitled to take the dog. But on cross-examination, Beebe could not remember what she learned from the research. Beebe admitted she never consulted a lawyer or the police and did not know whether what she read on the Internet was true.

> Q. Okay. And you have no legal training whatsoever; is that correct?
> A. Yes, it is.
> Q. So you actually don't know if this statement[, "By law, . . . keeping him from me is theft,"] is true.
> A. No. It's obviously feelings, just like all my other statements.

The court instructed the jury that the State had the burden of proving beyond a reasonable doubt that Beebe committed theft in the first degree and that Beebe did not take the dog "under a good faith claim of title."

---

[3] On March 13, 2015, the State amended the information to add the aggravating factor that Patterson was particularly vulnerable or incapable of resistance. At trial, the aggravating factor was dismissed at the close of the State's case.

The jury convicted Beebe of theft in the first degree. The court imposed an alternative sentence of 192 days of community service.

ANALYSIS

Sufficiency of the Evidence

Beebe contends sufficient evidence does not support the jury finding the State proved beyond a reasonable doubt that Beebe did not take the dog under a good faith claim of title.

Due process requires the State to prove beyond a reasonable doubt every element of the crime charged. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Evidence is sufficient if after viewing the evidence in the light most favorable to the State, a rational trier of fact could find each element of the crime proven beyond a reasonable doubt. State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). We draw all reasonable inferences in favor of the State and interpret the evidence "most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial and direct evidence is equally reliable and we defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

To convict Beebe of theft in first degree, the jury had to find beyond a reasonable doubt that she wrongfully took property from the person of another. RCW 9A.56.030(1)(b). It is a defense to theft in the first degree that "[t]he property . . . was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable." RCW 9A.56.020(2)(a). Because the "good faith claim

7

of title defense" negates intent, the State must disprove the defense beyond a reasonable doubt. State v. Hicks, 102 Wn.2d 182, 187, 683 P.2d 186 (1984); State v. Ager, 128 Wn.2d 85, 92, 904 P.2d 715 (1995).

Viewing the evidence in the light most favorable to the State, substantial evidence supports the jury finding Beebe did not have a claim of title made in good faith belief. Connie contacted Beebe on March 13, 2014 to tell her they surrendered the dog to an animal shelter and provided the address and telephone number for the Shelter. Connie did not hear from Beebe until April 19 when Beebe asked, "[W]here's [the dog]"? On June 23, PetWatch informed Beebe that Patterson was the dog's new owner. Beebe did not go to the Shelter until June 26. The Shelter told Beebe that Patterson adopted the dog and it does not rescind an adoption if there is an ownership dispute.

Beebe admitted learning that if Patterson was unwilling to give the dog back, she would need to go to court. But Beebe admitted at trial that she did not contact the police or a lawyer for help in getting the dog back and she did not know whether her legal research on Google was true. Beebe's Facebook posts describing herself as a "gangsta" planning a "heist" also show she did not make a good faith claim of title to the dog.

Sufficient evidence supports the jury finding the State proved beyond a reasonable doubt that Beebe committed theft in the first degree and did not act under a claim of title made in good faith.

Jury Instruction

Beebe contends she is entitled to reversal because the jury instruction on the law that governs the surrender of an animal to the City of Seattle Animal Shelter is an impermissible judicial comment on the evidence.

Article IV, section 16 of the Washington Constitution prohibits a judge from " 'conveying to the jury his or her personal attitudes toward the merits of the case' or instructing a jury that 'matters of fact have been established as a matter of law.' " State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). We review jury instructions de novo. Levy, 156 Wn.2d at 721.

The court instructed the jury on the Seattle Municipal Code (SMC) that applies to animals surrendered to the Shelter. SMC 9.25.091.A provides, "Strays and abandoned animals, following the holding period, and animals voluntarily surrendered . . . shall become the property of The City of Seattle." SMC 9.25.021.C defines "holding period" as follows:

> "Holding period" means seventy-two (72) hours commencing at the close of regular business on the day of detainment of any unlicensed or unidentified cat or dog, and one hundred forty-four (144) hours for any licensed or identified animal, excluding days the City Animal Shelter is not open to the public.

SMC 9.25.091.B provides, in pertinent part, that "[a]ny animal detained or surrendered . . . and not redeemed . . . may be held for a longer period to allow for adoption."

Jury instruction 6 states:

> Stray animals, abandoned animals, and animals voluntarily surrendered to the City of Seattle Animal Shelter shall become the property of the City of Seattle, following a holding period of 144 hours.

The City of Seattle Animal Shelter is authorized to permit the adoption of stray animals, abandoned animals, and animals voluntarily surrendered to the City after the expiration of the 144 hour holding period.

Beebe argues jury instruction 6 is an improper judicial comment on the contested question of whether the Shelter had the authority to allow Patterson to adopt the dog. We disagree.

Jury instruction 6 is not an improper comment on ownership of the dog. Nor does jury instruction 6 suggest ownership has been established as a matter of law or express an opinion on the validity of Beebe's claims.

Costs

Beebe asks this court to deny appellate costs. After considering the nonexclusive factors in State v. Sinclair, 192 Wn. App. 380, 367 P.3d 612 (2016), we exercise our discretion "to rule that an award to the State of appellate costs is not appropriate." Sinclair, 192 Wn. App. at 393.

We affirm the conviction of theft in the first degree.

WE CONCUR: