**UNITED STATES, Appellee,**

v.

**Private (E–2) Oscar J. CUNNINGHAM, SSN 065–56–0323, United States Army, Appellant.**

**CM 442064.**

U. S. Army Court of Military Review.

30 July 1982.

---

**540**

Captain Brett L. Antonides, JAGC, argued the cause for the appellant. With him on the brief were Captain Joseph A. Russelburg, JAGC, and Captain Gunther O. Carrle, JAGC.

Captain Paul K. Cascio, JAGC, argued the cause for the appellee. With him on the brief were Colonel R. R. Boller, JAGC, and Major John T. Edwards, JAGC.

Before MILLER, KUCERA and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

KUCERA, Judge:

Pursuant to his pleas, appellant Cunningham was convicted of two specifications of robbery and one specification of absence without leave in violation of Articles 122 and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 922 and 886 (1976). The military judge sentenced him to a dishonorable discharge, three years of confinement at hard labor, total forfeitures and reduction to Private E–1. In accordance with a pretrial agreement, the convening authority approved only so much of the sentence as provides for a dishonorable discharge, thirty months of confinement at hard labor, total forfeitures, and reduction to Private E–1.

The assignment of error claims that the plea of guilty to Additional Charge II and its Specification of robbery was improvident because Cunningham's factual recitation and the stipulation of fact do not establish that the taking of money was against the will and from the person or the presence of the victim named Wagner. We agree.

By implication, it appears that Cunningham was pursuing an avocation of providing bodily protection to prostitutes and enforcing their tariffs. Essentially, and as summarized in the defense appellate brief, Cunningham's version of the robbery in question shows that, on 18 August 1981, Cunningham was alone with a woman, Karola Feldhof, in the apartment of a mutual friend. At one point, another female acquaintance, Elvira King, rang the doorbell. When Ms. Feldhof answered, Ms. King indicated she had someone with her and they were coming in. Cunningham and Ms. Feldhof then concealed themselves in the bathroom of the apartment, and Ms. King entered the apartment with Wagner. Shortly thereafter, Ms. King told Wagner to pay her and get out, but he refused. At that point, Ms. King knocked on the bathroom

door and told Cunningham and Ms. Feldhof to come out. The four of them then sat down, drank some wine, and talked for a few minutes. After Ms. King brought it to Cunningham's attention that Wagner hadn't paid her the money that he owed her, Cunningham took Wagner into the bathroom to talk to him about that. While in the bathroom, Cunningham put a steak knife to Wagner's neck and intimated that he could get his neck cut if he didn't pay up. Cunningham then broke off the confrontation by telling Wagner to go about his business. At that point, Wagner left the bathroom to re-enter the room where the women were and began talking to one of the women. Cunningham did not rejoin the group for 5 or 10 minutes. Wagner stayed with the women for 10 or 15 minutes before leaving under the pretense of going to get the money that he owed and bringing it back. While Wagner was gone, Cunningham and the two women opened a suitcase that Wagner left behind and found a wallet containing approximately 250 German marks. The two women split the money, and Cunningham threw the suitcase over the balcony of the apartment. After one-half hour to an hour, Wagner returned with the local police, and Cunningham was apprehended.

■ The record of trial does not specifically pinpoint Cunningham's intent as to when the money allegedly due and owed to Ms. King was to be handed over. Based on our review of the record, we find that Cunningham intended to get money "then and there" when he put the knife to Wagner's throat in the bathroom. The record however does not support the finding that the taking of 250 German marks from the suitcase was against the will, and from the person or the presence, of the victim Wagner. When asked by the military judge why Wagner left the suitcase, the appellant responded "Because he said he was going to go and pick up money that he owed and bring it back." Wagner did not try to take the suitcase with him and there is no indication that the appellant would have attempted to stop him if he did. Despite attempts to rehabilitate Cunningham's plea, Cunningham maintained, "And then he [Wagner] said he was going to—and then he said well I'm gonna leave my suitcase, go get the money, and come back." When Cunningham placed the knife at Wagner's throat, the suitcase was not on Wagner's person nor in the bathroom where the "persuasive force" was being applied. As far as the record of trial is concerned, Cunningham may not even have been aware that the suitcase was anywhere in the apartment. In any event, he could not have been aware that the 250 German marks, subsequently discovered and taken, were in the suitcase.

In the course of our review we have also considered the "claim of right" rule and its applicability to the case at hand.

■ It is a principle of long standing in the military law that a person cannot be guilty of robbery in forcibly taking from the person or presence of another if he does so under a bona fide belief that he is the owner of such property, or is assisting an owner. *United States v. Maldonado*, 15 U.S.C.M.A. 285, 35 C.M.R. 257 (1965); *United States v. Kachougian*, 7 U.S.C.M.A. 150, 21 C.M.R. 276 (1956); *United States v. Mack*, 6 M.J. 598 (ACMR 1978). The rationale for this rule is that the appellant's sincere belief in his right to recaption negates the required *animus furandi*. *United States v. Petrie*, 1 M.J. 332 (CMA 1976). This "claim of right" rule is not without limit; it applies only where the claimant or his accomplice reclaim specific property rather than indeterminate property of similar value. *See United States v. Mitchell*, 30 C.M.R. 889, 893 (AFBR 1960). While there are no military cases directly on point, we hold that the rule does not apply to the taking of money or valuables in liquidation of an uncertain obligation or debt for money. *Cf. United States v. Petrie, supra* (it was no defense to robbery that accused took money from the victim to recover value of hashish); *State v. Martin*, 15 Or.App. 498, 516 P.2d 753 (1973); *State v. Pierce*, 209 Kan. 19, 490 P.2d 584 (1971); *Edwards v. State*, 49 Wis.2d 105, 181 NW2d 383 (1970);

542

(all standing for the proposition that the taking of money from a debtor by force to pay a debt is robbery), *see generally* 88 ALR3d 1309; 67 AmJr.2d, Robbery § 19.

In our opinion Cunningham had no right to vicariously assert a claim of right to the monies which may or may not have been owing Ms. King. Ms. King was not recovering her own property but attempting to collect on an obligation which may or may not have been owing.

Under these circumstances, we find the plea in question to be provident only to the extent it supports the offense of attempted robbery, but not the robbery itself.

Only so much of the findings of Additional Charge II and its Specification as provides that at the time and place alleged the appellant attempted to rob Walter Wagner of some money in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880, is affirmed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, only so much of the sentence as provides for a dishonorable discharge, two years of confinement at hard labor, total forfeitures and reduction to Private E–1 is affirmed.

Senior Judge MILLER and Judge LEWIS concur.