**UNITED STATES, Appellee,**

v.

**First Lieutenant Sigurd A. JETT, SSN 574–24–6331, United States Army, Appellant.**

**CM 441440.**

U. S. Army Court of Military Review.

19 Nov. 1982.

occur in the District of Columbia. *United States v. Jackson, supra; United States v. Charlton, supra.*

R. Stuart Broom, Esquire, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, and Captain Gary D. Gray, JAGC.

Captain Peter M. Donawick, JAGC, argued the cause for the appellee. With him on the brief were Lieutenant Colonel John T. Edwards, JAGC, and Captain Thomas E. Booth, JAGC.

Before MILLER, KUCERA and BADAMI, Appellate Military Judges.

## OPINION OF THE COURT

MILLER, Senior Judge:

Tried by a general court-martial composed of officer members, the appellant, contrary to his pleas, was convicted of the larceny of a 1977 Chevrolet Corvette and several interrelated offenses, to wit: signing a false official document, transportation of a stolen motor vehicle in foreign commerce, altering a public record, and conduct unbecoming an officer (four specifications).[1] He was sentenced to confinement at hard labor for six years, forfeiture of $1200.00 pay per month for 72 months, and dismissal from the service. On appeal appellant's principal contentions involve the adequacy of the military judge's prefindings instructions in that: (1) there was no instruction on the mistake of fact defense; (2) "ownership" was inadequately defined; (3) "public record" was not defined; and (4) the instruction on the elements of Specification 2, Charge III (altering a public record) was erroneous in that it did not require the court members to find that the altered order was a public record. We affirm.

Substantially summarized, the government's evidence is as follows. In March of 1981, the appellant sold his 1977 Chevrolet Corvette to Sergeant Heflin for a total purchase price of $8000.00. Heflin immediately paid $6000.00 down and agreed to pay off the remaining balance in $400.00 monthly installments. With payment of the $6000.00, Heflin was given possession of the Corvette and, thereupon, he transferred his insurance to the car. The appellant also gave Heflin the blue and white registration forms on the car, but retained the title until the full purchase price was paid. The appellant also retained one set of keys.

For the next four months Heflin had sole and exclusive possession of the Corvette and, as agreed, made the $400.00 monthly payments. Two of the payments were made to First Lieutenant Alexander, who accepted the payments on Jett's behalf.

During the same period Heflin also made extensive repairs on the automobile, investing roughly 150 to 200 hours of his labor and approximately $2500.00 of his money for parts. At one point during the car's renovation, Jett observed the work in progress and commended Heflin on the "nice job."

On 16 July Heflin awoke to discover that "his" Corvette had been stolen. The night before he had locked the doors, and there was no broken glass where the car was parked, suggesting that the car was not forcibly entered. The following month a Government investigator discovered that the appellant had taken the car to the Bremerhaven, West Germany, port of entry on 17 July where he registered the Corvette nonoperational, turned in the license plate, and had it shipped to Oakland, California. Jett said nothing about this at the time to Heflin or anyone else. At no time did he offer to return the $7600 which Heflin had paid him.

For the most part the defense focused on the perceived weaknesses in the government's case during cross-examination and argument. Appellant elected not to testify on his own behalf. In defense one witness was called, a Mr. (Formerly First Lieutenant) Alexander,[2] who denied receiving from Heflin the monthly installments Heflin had testified he paid to Alexander. Alexander's testimony was contradicted by another government witness who testified he saw Heflin transfer money to Alexander on one occasion. Alexander's credibility was also substantially impeached by other government witnesses who stated that he was dishonest and untruthful.

I

■ The appellant contends that the military judge erred by failing to instruct the court members as to the defense of mistake of fact. In order to raise such a defense to the offense of larceny, there must be some

---

1. Violations of Articles 121, 107, 134, and 133, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 907, 934, and 933 (1976).

2. Alexander had been discharged from the service in lieu of a court-martial for indecent exposure.

evidence from which a reasonable inference can be drawn that the accused maintained an honest, albeit mistaken, belief "that he has a legal right to acquire or retain property. . . ." *United States v. Greenfeather,* 13 U.S.C.M.A. 151, 156, 32 C.M.R. 151, 156 (1962); *cf. United States v. Smith,* 14 M.J. 68 (C.M.A.1982).

■ We conclude from the facts of this case that no reasonable person could have concluded that Jett honestly believed he was the legal owner or that he could lawfully dispossess Heflin of possession. *See United States v. Kachougian,* 7 U.S.C.M.A. 150, 21 C.M.R. 276 (1956); *United States v. Cunningham,* 14 M.J. 539 (A.C.M.R.1982). The appellant's surreptitious removal of the automobile as a "thief in the night," his hasty flight to Bremerhaven, the altered orders, the false documents which were necessary to ship the car off, and most importantly, the absence of any statement by Jett to Heflin or anyone else that he was cancelling the sale and would return Heflin's $7,600.00, belies the possibility that Jett's actions were either honest or mistaken. We conclude the defense was not raised.

## II

In two closely related assignments of error the appellant contends: first, that the military judge's instruction on "ownership" of the automobile was inadequately defined, *viz.* "There is no indication on the record that the military judge made any reference to title, certificate of title, or registered owner when he was instructing on the element of ownership;" and, second, that the Government failed to prove beyond a reasonable doubt that Sergeant Heflin was the owner.

■ Article 121, Uniform Code of Military Justice, defines larceny as the wrongful taking, by any means, from the possession of the "owner or any other person" of property with the intent to permanently deprive. For purposes of the Code the term "owner" "refers to the person who, at the time of the taking, obtaining, or withholding, had the superior right to possession of

the property in the light of all conflicting interests therein which are involved in the particular case." Paragraph 200*a*(3), Manual for Courts-Martial, United States, 1969 (Revised edition). The phrase "any other person" means any person "who has possession or a greater right to possession than the accused." *Id.* Thus, "ownership" may describe one who has dominion or control over a thing, though title may be in another. *See Baltimore Dry Docks & Ship Building Co. v. New York & P.R.S.S. Co.,* 262 F. 485, 488 (4th Cir.1919); *Robinson v. State,* 7 Ala.App. 172, 175, 62 So. 303, 306 (1913). It may also denote the purchaser under a conditional sales agreement. *See E. Corey & Co. v. H.P. Cummings Const. Co.,* 118 ME. 34, 36, 105 A. 405, 407 (1919). Accordingly, a victim of a larceny can be anyone who has a superior right of possession in property than the accused, regardless of who has title. *United States v. Leslie,* 13 M.J. 170, 171–172 (C.M.A.1982).

■ The military judge instructed the court members that the "owner" of property is one who has a greater right to possess the property than anyone else." The court members were admonished that the question of who had the greater right to possession was to be determined "in light of all conflicting interests. . ." and "considering all the facts and circumstances presented by the evidence, including the presence or absence of an agreement between the parties with regard to who had the greater right to the possession of the property under the various circumstances." We conclude these instructions were quite correct. Although it would have been preferable to refer to title and registration during the instructions, failure to do so does not, under the circumstances herein, constitute error. Furthermore, assuming that the military judge should have more clearly defined the "indices" of ownership, we find that appellant waived any error. In this respect, we note trial defense counsel's remark that the "revised" instruction "sounds satisfactory." *United States v. Cosby,* 14 M.J. 33 (C.M.A. 1982); *United States v. Salley,* 9 M.J. 189 (C.M.A.1980).

■ As to the evidentiary sufficiency, we are satisfied beyond a reasonable doubt that

Sergeant Heflin had the greater right to possession of the Corvette and, consequently, that he was the owner within the meaning of Article 121, Uniform Code of Military Justice.

### III and IV

Appellant contends that the military judge failed to properly instruct the court members as to the definition of a "public record." We disagree inasmuch as a military judge is not required to define generally known words such as public record. *United States v. Shepard,* 1 U.S.C.M.A. 487, 4 C.M.R. 79 (1952). Moreover, the military judge could have properly found that the record involved, a Department of the Army order for movement of dependents, was a public record as a matter of law. *See* Mil.R.Evid. 803(8). Finally, the appellant's failure to object to the instruction given or propose any form of instruction thereby waives any possible error. *United States v. Cosby* and *United States v. Salley,* both *supra.*

We have considered the remaining assignments of error and find them similarly without merit.

The findings of guilty and the sentence are affirmed.

Judge KUCERA and Judge BADAMI concur.