**UNITED STATES, Appellee,**

v.

**Private First Class Thomas E. FELL,
157–58–7265, United States Army,
Appellant.**

**ACMR 8901992.**

U.S. Army Court of Military Review.

31 July 1991.

For Appellant: Captain Timothy P. Riley, JAGC (argued), Colonel Robert B. Kirby, JAGC, Captain Robert C. Wee, JAGC (on brief).

For Appellee: Captain Marcus A. Brinks, JAGC (argued), Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Martin D. Carpenter, JAGC (on brief).

Before GRAY, FOREMAN and HAESSIG, Appellate Military Judges.

## OPINION OF THE COURT

HAESSIG, Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of felony-murder, robbery, and sodomy in violation of Articles 118, 122, and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 918, 922, and 925 (1982) [hereinafter UCMJ]. The appellant's approved sentence includes a dishonorable discharge, confinement for twenty-five years, total forfeitures, and reduction to the grade of Private E1.

### I

### Facts

On the afternoon of 30 January 1989, the appellant, a twenty-one year old married soldier, began drinking in his barracks, and later continued drinking with friends at a bar near his installation in Ludwigsburg, Federal Republic of Germany. At about 2300, he and his friends left the bar. The appellant's friends returned to their installation while the appellant, carrying a bottle of beer and unsteady on his feet, decided to walk to see his girlfriend, Ms. Monika Prestel, who lived approximately 500 yards away. As he walked towards Ms. Prestel's, a car drove up to him, and the driver, Mr. Otto R. Bode, a seventy-four year old German male wearing a wig, necklace, lipstick, and a man's suit, asked the appellant in broken English where he was going. The appellant replied that he was going to see his girlfriend. Mr. Bode asked the appellant if he wanted a ride and the appellant declined. The car drove off slowly and the appellant continued to walk. Shortly thereafter, the car reappeared and Mr. Bode again asked the appellant if he wanted a ride, saying that he looked drunk. The appellant momentarily thought about the offer and approached the car. Mr. Bode, according to the appellant, appeared to be a woman between thirty and forty years old. The appellant got in the car and the two drove off. They drove past Ms. Prestel's, and as they approached another bar, the appellant told Mr. Bode to stop because he wanted a beer. Mr. Bode said it wasn't necessary to stop and produced a beer from the back seat which the appellant accepted. They again started going toward Ms. Prestel's but the appellant "got wrapped up into conversation more or less with her [Mr. Bode] and so we drove past my girlfriend's house, so I gave that up for a little while."

After driving for some time, Mr. Bode ran his hand up the appellant's leg and to his crotch. While stopped at a traffic light, and as Mr. Bode continued to rub the appellant's crotch, the appellant became sexually excited and French kissed Mr. Bode. The traffic light changed and by the time the pair stopped at the next traffic light Mr. Bode had unzipped the appellant's pants and was fondling his penis. Mr. Bode began to perform fellatio upon the appellant who objected because "we were around all these lights" and because he was not wearing a condom and did not want to contract

a disease. The light changed and Mr. Bode asked the appellant, "Do you want to go somewhere?" The appellant responded, "Yeah."

Mr. Bode and the appellant rode together for approximately an hour before ending up in an isolated field. Mr. Bode again began to perform fellatio on the appellant who "nudged" Mr. Bode off because he again did not have on a condom. Before the appellant could produce a condom of his own, Mr. Bode produced one and put it on the appellant. Mr. Bode again started to perform fellatio on the appellant. Mr. Bode put his seat in a reclining position and the appellant began masturbating. Mr. Bode then removed his pants and moved onto the appellant's lap, facing forward toward the windshield of the car with his back and buttocks toward the appellant. The appellant climaxed as he thought he was inserting his penis into a vagina, and reached around Mr. Bode to "fondle her clitoris" when he found Mr. Bode's penis instead.

The appellant, a weight lifter who could bench press 250 pounds, testified that he "freaked" and "started yelling at him and I jumped on him ..., with my arm on him and I was hitting him and he hit me back and then I just-like grabbed him and shoved him into the back ... threw him into the back." The appellant buttoned up Mr. Bode's pants and removed his wallet "to see who this dirt bag was." After finding nothing but about sixty German Deutsch Marks (US $32.60 at the existing exchange rate) in the billfold, the appellant decided, "Well, hey! He did me wrong so I'll take his money.... I just said 'fuck him' and took them [deutsch marks]. He deserved it. That was basically—this is what I feel—I felt at the time. I took the money because I was of the opinion that the man had done wrong to me and that he was owing me something." In addition to taking Mr. Bode's cash, the appellant also took Mr. Bode's watch, bracelet and ring valued at $210.00. When asked what he did when he left Mr. Bode, the appellant said, "I kicked at him. I'm not even sure I did it. I couldn't see, I might have kicked the gear shirt [sic] or something." In re-

sponse to questioning from his civilian defense counsel, the appellant said that the only reason he would have had to kick was to kick Mr. Bode. Before leaving the scene, the appellant took another beer from the back seat of Mr. Bode's car and drank approximately half of it prior to reaching Ms. Prestel's. At the time the appellant left the scene he said that Mr. Bode was breathing in a manner described as shallow, painful, and gasping for breath. Mr. Bode was not moving. The cause of Mr. Bode's death was later determined to be from suffocation as a result of paralysis caused by a broken neck.

Upon reaching Ms. Prestel's, the appellant gave her Mr. Bode's watch, bracelet and ring, telling her, "I think I just killed someone." During that conversation, the appellant was overheard by another person to say that he had "choked the shit" out of this same person. The appellant later told a fellow soldier that he had "biffed some faggot."

## II

### Mistake of Fact Instruction

The appellant contends that the military judge erroneously instructed the members on the defense of mistake of fact. His theory regarding the charge of robbery, its lesser included offense of larceny and felony-murder was that: he believed Mr. Bode to be a thirty to forty year old female instead of the seventy-four year old male he was; Mr. Bode tricked him into homosexual activity; as a result, he believed Mr. Bode owed him something for having so tricked him; and his taking of Mr. Bode's money and jewelry was merely the taking of property to which he was legally entitled. He requested that the military judge instruct the members on mistake of fact with respect to those offenses.

The military judge gave the following mistake of fact instruction regarding felony-murder, robbery, and the lesser included offense of larceny:

If the accused took this property under the mistaken belief that the victim owed him the property because he was tricked

into having sex with Mr. Bode he cannot be convicted of felony-murder, robbery or larceny if the accused actually had such belief, no matter how unreasonable such a belief, *and if that was the sole reason he took the property. However, if the accused took the property for the purpose of teaching Mr. Bode a lesson, the fact that he believed he was entitled to the property would not be a defense.* (Emphasis added).

As a general rule, an accused's mistaken but subjectively honest belief that he is the owner of property he forcibly takes from another is a defense to a charge of robbery. *United States v. Kachoughian,* 21 C.M.R. 276 (C.M.A.1956); *United States v. Petrie,* 1 M.J. 332 (C.M.A.1976). Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 916(j) [hereinafter R.C.M.]. This is because robbery is a compound offense consisting of larceny and assault, *United States v. Chambers,* 12 M.J. 443, 446 (C.M.A.1982), and the mistaken belief of ownership negates the intent to steal required in larceny. *Petrie,* 1 M.J. at 334.

There are, however, limits to the general rule. For example, a person does not have a right to retrieve contraband or property taken in lieu of contraband. *Petrie,* 1 M.J. at 334. The rule does not apply to the taking of "money or valuables in liquidation of an uncertain obligation or debt for money." *United States v. Cunningham,* 14 M.J. 539, 541 (A.C.M.R.1982), *reversed on other grounds,* 15 M.J. 282 (C.M.A.1983). It does not apply where the property taken had been previously stolen by the robbery victim, or where the victim was engaged in illegal activity, or where the proceeds taken were from the sale of drugs. *United States v. Robinson,* 49 C.M.R. 183, 187 (A.C.M.R.1973). Additionally, while a bona fide mistake of fact that the property being recaptured is one's own can be a defense to the larceny component of robbery, it is not a defense to the second component of that offense, assault in its various forms, *United States v. Mack,* 6 M.J. 598 (A.C.M.R.1976), *petition denied,* 6 M.J. 157 (C.M.A.1978), and the accused's

mistaken belief must be one which, if true, would make his conduct noncriminal. *See United States v. Vega,* 29 M.J. 892 (A.F.C.M.R.1989), *petition denied,* 31 M.J. 403 (C.M.A.1990).

Here the appellant was engaged in criminal activity and therefore was not entitled to the mistake of fact defense. The appellant testified that he believed he was having sexual intercourse with a female rather than engaging in homosexual acts with a seventy-four year old male. Thus, even if the facts had been as the appellant believed them to be, the defense of mistake of fact was not available to him for two reasons. First, he was engaging in criminal conduct by attempting to commit adultery by having sexual intercourse with a woman not his wife in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880 (1982), and by engaging in sodomy in violation of Article 125, Uniform Code of Military Justice, 10 U.S.C. § 925 (1982). Second, he admitted he was reclaiming money and valuables in liquidation of an uncertain obligation or debt for money for rendering homosexual services: "I was of the opinion that the man had done wrong to me and that he was owing me something." Accordingly, we hold as a matter of law that the defense of mistake of fact was not available to the appellant, and the military judge should not have given such an instruction.

In his mistake of fact instruction, the military judge initially and erroneously instructed the court members that if they believed the appellant took Mr. Bode's property because he believed Mr. Bode owed him something for tricking him into engaging in homosexual activity, they could not find him guilty of felony-murder, robbery or larceny. He then compounded his error by apparently combining intent and motive, and instructed the members that if the appellant had any other "reason" for his actions, *i.e.,* to teach Mr. Bode a lesson, in addition to his mistaken belief of fact, that "reason" would negate the appellant's mistake of fact defense. *See generally United States v. Kastner,* 17 M.J. 11 (C.M.A.1983) (discusses the distinc-

tion between motive and intent). This deviation from the model instruction contained in Department of the Army Pamphlet 27–9, Military Judge's Bench Book, para. 5–11 (1 May 1982) had the net effect of neutralizing the instruction in that what the instruction provided in the first half was negated in the second half, underlined above. Notwithstanding the above, the defense did not object to the mistake of fact instruction at trial. Such failure to object constitutes waiver, absent plain error. *United States v. Hargrove*, 25 M.J. 68 (C.M.A.1987); *United States v. Fisher*, 21 M.J. 327 (C.M.A.1986); R.C.M. 920(f) and 1005(f). We do not find plain error.

■ Although the military judge erred, we are satisfied beyond a reasonable doubt that the appellant suffered no prejudice. *See United States v. Eason*, 21 M.J. 79 (C.M.A.1985). The appellant cannot complain of receiving the benefit of a mistake of fact instruction which was too restrictive when, as a matter of law, he was not entitled to the instruction in the first place. Article 59(a), UCMJ, 10 U.S.C. § 859(a). We are not faced with a situation like that found in *United States v. Berg*, 30 M.J. 195 (C.M.A.1990), where the court found that it could not say that a particular instruction did or did not provide the basis for conviction. Here, even if the members applied the instruction given, and found against the appellant based on it, he would have been in no worse position that if the instruction had never been given.

### III

### The Defense Requested Instruction on Felony–Murder

■ The defense requested, and the military judge refused to give, the following instruction regarding the causal connection required between the commission of the robbery and the acts which caused Mr. Bode's death:

The causal connection requires that the accused have the intent to commit the underlying felony at the time of the actions which caused the killing. In this case, the government must prove beyond

a reasonable doubt that the accused intended to rob the deceased at the time of the actions which caused Mr. Bode to die.

The defense theory underlying its requested instruction was that the appellant could only be found guilty of felony-murder if he formed the intent to rob Mr. Bode prior to the infliction of the death blows. The prosecution contended that as an alternative to forming the intent to steal prior to the death blows, it was sufficient if the appellant formed the intent to steal after the infliction of those blows based on our holding in *United States v. Washington*, 12 M.J. 1036 (A.C.M.R.1982), *petition denied*, 14 M.J. 171 (C.M.A.1982). In that case we held, after reviewing the historical treatment of the issue, that the intent to steal required in robbery may be formed after the commission of an assault rendering the victim helpless. *See United States v. Thomas*, 11 M.J. 388, 394 (C.M.A.1981). *But see United States v. Bolden*, 514 F.2d 1301, 1307 (D.C.Cir.1975). *See generally* LeFave, Modern Criminal Law 266–271 (1978) and 58 A.L.R. 3d 851 (1974) (discussion of the felony murder rule). From the evidence before the members, the argument of counsel on their respective positions, and the causal relationship instruction given by the military judge, the members could reasonably have found that the appellant formed the intent to steal from Mr. Bode either at some time prior to the infliction of the death blows, or after rendering him helpless. We hold that the military judge did not err in refusing to give the defense requested instruction.

### IV

### Failure to Account for Members

■ The appellant asserts that the failure of the military judge to comply with Rule for Courts–Martial 813(a)(4) by failing to ensure that the names and ranks of the court-martial members were announced on the record deprived the court of jurisdiction. We disagree.

The appellant requested that his court-martial be composed of officer and enlisted members pursuant to Rule for Courts–Martial 503(a)(2). Accordingly, the convening

authority appointed six officers and six enlisted members to the court. At the initial session of the court when the members were present the military judge asked them to check their names and social security numbers as reflected in the convening order. No member noted any error in either identifier. Of the six officer members, five were identified on the record by name during voir dire. A sixth officer member had been excused. Of the five enlisted members, three were identified on the record by name as being present. A sixth enlisted member had been excused. At the conclusion of voir dire there were neither challenges for cause nor peremptory challenges by either side, and the military judge noted that "[W]e end up with all ten members" and that "We have one, two, three, four, five enlisted members so we have our quorum of one third enlisted members." The record thus establishes, and we find, that the appellant's court was composed of ten detailed members: five officer members who were identified by name as being present, and five enlisted members, three of whom were identified by name and two by inference. We find that there was a quorum, that there was a sufficient number of enlisted members empaneled, and that the appellant was tried by the court-martial to which the charges against him had been referred.

Rule for Courts–Martial 813(a) requires that when a court-martial is called to order for the first time the military judge "shall ensure that the following is announced: ... the names and ranks of the members ... who are present," and after the court is called to order following a recess, adjournment or after having been closed "whether all parties and members who were present at the time of the adjournment or recess or ... clos[ing] are again present."

Rule for Courts–Martial 813(a) is today's version of the earlier practice of noting in the record of proceedings the names of the members present and absent, Manual for Courts–Martial, United States Army, 1901,

p. 138; Manual for Courts–Martial, United States Army, 1905, p. 142; Manual for Courts–Martial, United States Army, 1908, p. 142; or the "roll call" procedure noted by Winthrop as existing prior to 1886. Winthrop, Military Law and Precedents, Ch. XI, Sec. II, p. 214, (1886). The Manual for Courts–Martial, United States Army, 1917, para. 84, and the Manual for Courts–Martial, United States Army, 1921, para. 84, also provided for merely "informally noting" the presence or absence of members in the record. The practice of announcing the names of the members present appears to have originated in the Manual for Courts–Martial, United States Army, 1928, and has been carried forward since then.

From a review of previous Manuals for Courts–Martial, it is clear that the accounting for military members detailed to a particular duty, here sitting as a member of a court-martial, does not create a right of jurisdictional proportions for an accused. While the military judge's failure to personally, or have the trial counsel, account for the members on the record is error, that failure does not deprive the court-martial of jurisdiction, nor does it require reversal where there are logical inferences elsewhere in the record that the detailed members were present. *United States v. Wheatcraft*, 23 M.J. 687 (A.F.C.M.R.1986), *petition denied*, 24 M.J. 54 (C.M.A.1987); *United States v. Staton*, 48 C.M.R. 250 (1974).

The record here reflects that the appellant's court-martial was composed of ten properly detailed officer and enlisted members. Eight of the members were identified by name on the record, and two inferentially by virtue of not making a response when asked by the military judge to note errors in their identifying data. There was no objection to the composition of the court-martial by the appellant's experienced civilian defense counsel. Thus, in the absence of evidence that the court which tried the appellant was not properly constituted, we will infer that the members present were properly detailed. Thus, while the military judge erred, the appel-

lant suffered no prejudice. Accordingly, we find this assignment of error to be without merit.

We have considered the remaining errors assigned by appellant, including those personally asserted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Chief Judge GRAY and Senior Judge FOREMAN concur.