**UNITED STATES**

v.

**Sidney MARTIN, 168 56 7945, Seaman Apprentice (E–2), U.S. Naval Reserve.**

**No. NMCM 92 1226.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 28 Jan. 1992.

Decided 30 April 1993.

LT Michael C. Pallesen, JAGC, USNR, Appellate Defense Counsel.

Lt Col Frank F. Krider, USMCR, and Capt Laulie S. Powell, USMC, Appellate Government Counsel.

Before J.A. FREYER, Senior Judge, and ALBERT A. REED and R.M. MOLLISON, JJ.

FREYER, Senior Judge:

In accordance with his pleas, the appellant was found guilty of wrongful appropriation of a ring, aggravated assault, and wrongful communication of threats, in violation of Articles 121, 128, and 134, respectively, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 921, 928, 934. A military judge sentenced the appellant to confinement for two months, forfeiture of $523.00 pay per month for two months, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority approved the sentence without modification, and appellant's case is now before this Court for review in accordance with Article 66, UCMJ. The appellant's two assignments of error [1] lack merit, *United States*

1. I. APPELLANT'S COURT-MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. (CITATIONS OMITTED). BECAUSE THIS ERROR IS JURISDICTIONAL, THE ISSUE IS NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL. (CITATIONS OMITTED). II. THE COURT-MARTIAL HAD NO JURISDICTION BECAUSE THE MILITARY JUDGE'S LACK OF A FIXED TERM OF OF-FICE LEFT THE MILITARY JUDGE INSUFFICIENTLY INDEPENDENT TO SATISFY THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE. (CITATIONS OMITTED). BECAUSE THE ERROR IS JURISDICTIONAL AND THE RECORD CONTAINS NO EVIDENCE OF A *KNOWING* WAIVER OF APPELLANT'S RIGHT TO AN INDEPENDENT MILITARY JUDGE, THE ISSUE IS NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL.

*v. Weiss,* 36 M.J. 224 (C.M.A.1992); *United States v. Graf,* 35 M.J. 450 (C.M.A.1992), and need not be discussed. The Court on its own, however, specified a third issue, which is set forth below and does warrant some discussion.

The facts of this case material to the specified issue are as follows: After entry of the appellant's guilty pleas, the military judge conducted the requisite guilty plea providence inquiry. Rule for Courts–Martial (R.C.M.) 910, Manual for Courts–Martial, United States, 1984. He was informed by the appellant that the victim owed the appellant money, so the appellant went to the victim's barracks room seeking payment. After the victim told the appellant to get out of his room, the appellant threatened "to kick [the victim's] ass" if he was not paid. After a second rebuff, the appellant "got hyped," beat the victim with his fists and legs, and struck the victim three times on the back of the head with a television set. The appellant then removed a gold diamond ring from the prostrate victim's hand and informed the victim that he would hold the ring until the victim paid him the money owed. The appellant admitted that the victim did not consent to the taking of the ring, that the appellant did not have a right to take the ring, and that he took it just for collateral until the victim paid him his money. The appellant placed the value of the ring at approximately $100.00 to $150.00. The debt of which the appellant sought to secure payment with the ring was in the amount of $220.00. On the basis of these admissions, we specified the following issue:

> WHETHER THE APPELLANT'S PLEA OF GUILTY TO WRONGFUL APPROPRIATION OF A RING ... WAS PROVIDENT IN LIGHT OF HIS STATEMENT THAT HE TOOK THE RING AS SECURITY FOR THE PAYMENT OF A DEBT WHICH EXCEEDED THE RING'S VALUE? *SEE UNITED STATES V. EGGLETON,* 22 C.M.A. 503, 47 C.M.R. 920 (1973).

 Under military law, an accused may not enter inconsistent, improvident or uninformed pleas of guilty, and inconsisten-cies and apparent defenses must be resolved, or else the guilty pleas must be rejected by the military judge. *E.g., United States v. Newsome,* 35 M.J. 749 (N.M.C.M.R.1992) (citing and quoting from cases). On the other hand, before a Court of Military Review may reject a guilty plea, the record of trial must show a substantial basis in law or fact for questioning the guilty plea. *Id.* at 751 (quoting *United States v. Prater,* 32 M.J. 433, 436 (C.M.A. 1991)); Art. 59(a), UCMJ, 10 U.S.C. § 859(a).

 The matter of the appellant's liability for wrongful appropriation requires that his taking of the ring have been "wrongful," which, in turn, depends on the respective rights to possession of the ring at the time of the taking, as distinguished from the *manner* in which the ring was taken. As noted in paragraph 46c(1)(d), Part IV, Manual for Courts–Martial, United States, 1984: "However, such an act [taking, obtaining, or withholding] is not wrongful ... if done by a person who has a right to the possession of the property either equal to or greater than the right of . one from whose possession the property is taken, obtained, or withheld." Thus, if the appellant had a right of possession of the ring equal or superior to the victim's, how he asserted that right might affect his liability for other offenses, such as assault, but could not possibly render him liable under Article 121 as a thief or wrongful appropriator, nor under Article 122 as a robber. This conclusion follows inexorably from the elemental nature of larceny, wrongful appropriation, and robbery as being, in whole or at least in indispensable part, crimes against possessory interests in property.

Having said that, we are aware of no general legal principle whereby a mere unsecured creditor may elevate himself to the preferred status of a secured creditor by grabbing at will chattels belonging to the debtor as security for the debt, except in certain clearly defined relationships, not applicable here, such as innkeeper-guest and landlord-tenant, where a limited right to distrain property is afforded by law, or

where the right to take security in the event of default is provided by agreement between the parties.

Cases such as *United States v. Eggleton,* 22 U.S.C.M.A. 503, 47 C.M.R. 920 (1973), are not to the contrary. The issue in *Eggleton* was not the wrongfulness, *vel non,* of the taking, but the intent, or *mens rea,* required for a violation of Article 121 or 122. *Eggleton* did not purport to establish it as a rule of property law that an unsecured creditor is generally entitled to seize chattels of the debtor as security for the debt. *Eggleton* merely held that the *mens rea* involved in taking the property of another to secure a debt did not amount to such a criminal intent as would support a conviction under Article 121 or 122. It is apparent that *Eggleton* was decided while the U.S. Court of Military Appeals still followed the "innocent purpose" doctrine, exemplified by *United States v. Roark,* 12 U.S.C.M.A. 478, 31 C.M.R. 64 (1961), whereby one who intentionally (in the sense of "knowingly") perpetrated a "wrongful taking" (*i.e.,* a taking which would be tortious under the civil law because it was from one with a superior right of possession and without legal justification or excuse) could yet lack the *mens rea* necessary for a violation of Article 121 or 122.

The "innocent purpose" doctrine was abandoned in *United States v. Kastner,* 17 M.J. 11 (C.M.A.1983), and *United States v. Johnson,* 17 M.J. 140 (C.M.A. 1984). Although neither of these cases addressed the effect of the new rule on *Eggleton* situations, it seems only logical that, if the taking by an unsecured creditor of chattels belonging to a debtor as security for the debt is a "wrongful taking," and such taking is done knowingly and with the intent, even if not the purpose, of temporarily depriving the debtor of the "security," the creditor may be held liable under Article 121 for wrongful appropriation without regard to the manner in which the chattels were taken. In our view, the appellant's pleas to wrongful appropriation were, therefore, provident, and the manner of the taking is irrelevant to the providence of the pleas to that offense.

The findings of guilty and the sentence, as approved on review below, are affirmed. We note, however, that the court-martial order incorrectly relates the monthly forfeiture as being of $532.00, vice $523.00. A corrected court-martial order shall be issued.

Judge REED concurs.

MOLLISON, Judge (concurring in the result):

I join in the affirmance of the findings and sentence in the appellant's case. However, insofar as the majority seems to say that the taking of property to secure a debt is per se a violation of Article 121, it goes beyond the material facts of this case and the decisions of our senior Court. It also seems to ignore authority that recognizes a defense to a charge of larceny when the property is taken to secure a debt. 3 Charles E. Torcia, *Wharton's Criminal Law* § 366 at 340 (14th ed. 1980). In fact, one old line of authority states the general rule is that "one who openly and avowedly takes the property of another without the latter's consent, in settlement of or as security for a debt bona fide claimed to be due him by the owner of the property, is, no matter what the offense may be, at least not guilty of larceny or embezzlement.... It is otherwise, however, where there is a lack of good faith in asserting a debt, or where there is evidence tending to show a felonious intent in the taking of the property." Annotation, *Larceny or Embezzlement as Affected by Purpose to Take or Retain Property in Payment of, or as Security for, a Claim,* 13 A.L.R. 142 (1921). *See also* Annotation, *Offense of Larceny, Embezzlement, Robbery, or Assault to Commit Robbery, as Affected by Defendant's Intention to Take or Retain Money or Property in Payment of, or as Security for, a Claim, or to Collect a Debt, or to Recoup Gambling Losses,* 116 A.L.R. 997 (1938). More to the point, given the state of military case authorities, discussed *infra,* the majority and I part company when it concludes that the manner of taking is immaterial. Based on military case authorities and the material facts of

this case, I view the issue as follows: Whether the taking of another's property as collateral to secure a debt is wrongful under Article 121 when the taking is accomplished by force and violence? For the reasons noted below, I conclude it is.

The offenses of larceny and wrongful appropriation include as essential elements a wrongful taking, obtaining or withholding of the property from the possession of one who has a superior right to possession, coupled with an intent to steal or appropriate. MCM, 1984, Part IV, ¶ 46. The authorities on the issue before us address variously whether the taking was wrongful, whether there was a superior right of possession in the party from whom the property was taken, and/or whether the accused harbored the requisite criminal intent. Frequently, the issue is placed under the rubric of "claim of right."

In *United States v. Smith*, 2 U.S.C.M.A. 372, 8 C.M.R. 112 (1953), the accused entered a room and took a suitcase and items of clothing in the belief that the items belonged to his debtor. Some of the items of clothing did. The debtor confirmed that he owed the accused money and had informed the accused he could take his clothing if he did not repay the loan. The appellant was convicted of larceny. One may surmise the law officer instructed on a defense of claim of right as to larceny. The accused claimed on appeal it was error for the law officer not to have instructed on the lesser included offense of wrongful appropriation. The Court of Military Appeals concluded that wrongful appropriation was not fairly raised by the evidence. The Court observed that if the accused rightfully took the items of clothing as collateral for the debt owed him, then he was guilty of neither larceny nor wrongful appropriation, and an instruction on the lesser included offense of wrongful appropriation was, therefore, unnecessary. The Court had no occasion to address whether the accused could have taken the clothing by force or without the owner's consent.

In *United States v. Kachougian*, 7 U.S.C.M.A. 150, 21 C.M.R. 276 (1956), the Court of Military Appeals accepted "as a general principle of law, that a person is not guilty of robbery in forcibly taking property from the person of another, if he does so under a bona fide belief that he is the owner of such property, or is assisting an owner." 21 C.M.R. at 282. In *Kachougian*, however, the Court neither found such belief existed nor did it address whether *collateral* could be taken by force.

In *United States v. Dosal–Maldonado*, 12 U.S.C.M.A. 442, 31 C.M.R. 28 (1961), the accused pled guilty to larceny of $50.00, the amount of money he had taken from the locker of an individual he believed had cheated him at cards. The Court of Military Appeals found the guilty plea provident to the extent the amount recouped by the accused exceeded the amount he had lost. As to the amount he had lost, the Court doubted the providence of the plea and modified the findings accordingly, citing *Kachougian*. Again, the Court was not concerned with a taking of property as collateral or a taking by violence.

In *United States v. Eggleton*, 22 C.M.A. 503, 47 C.M.R. 920 (1973), the accused took a stereo music center partly as collateral for money owed him by the owner and partly as a trick or a joke. The debt was $90.00 to $100.00, whereas the stereo was of a value of over $800.00. The appellant pled guilty to wrongful appropriation and on appeal challenged the providence of the plea. The Court assumed the correctness of the proposition that an accused who takes property, or assists another to take property, as security for a bona fide debt does not possess the criminal intent necessary for a conviction of larceny or wrongful appropriation. Citing, *Dosal–Maldonado*, it observed that where more money is recouped than can be the subject of a claim of right, the taking of the excess is indicative of criminal intent, and so, too, is the taking of collateral reasonably valued far in excess of the debt it secures. In affirming *Eggleton*, the author of the opinion, Judge Duncan, was of the opinion that the use of self-help, based on a claim of right, should be limited to recoupment of specific property, and he did not agree with the proposition that there is no criminal intent when one takes property to secure a debt.

However, under the circumstances of the case, he believed the doctrine of *stare decisis* applied. 47 C.M.R. at 922 n. 2. In *Eggleton*, the taking of the collateral was not accomplished by force.

In *United States v. Petrie*, 1 M.J. 332 (C.M.A.1976), the accused robbed his victim of $178.00 because he thought the victim had stolen hashish from him. The accused claimed that he could not be guilty of robbery because he had a right to the money as payment for the hashish. Citing *Kachougian*, the Court of Military Appeals recited the proposition that when a person takes property from another under the honest belief he is entitled to its possession, that is, he has a sincere belief of a claim of right, he takes the property without the specific intent to deprive a person with a superior possessory right and has no intent to steal. Although unnecessary to the disposition of the appeal, the Court also stated in a footnote that the same principle applies when one takes property to secure a debt, citing *Eggleton* and *Smith, supra*. *Petrie*, 1 M.J. at 334 n. 4. The *Petrie* Court then held that the claim of right defense was not applicable because the accused had no right to reassert possession of the contraband.

Finally, in *United States v. Smith*, 14 M.J. 68 (1982), the Court of Military Appeals held a plea of guilty to robbery was improvident in light of the accused's claim he was only trying to acquire his own property. In fact, the accused was trying to collect from his victim money the victim owed to a third party who in turn owed money to the accused. The Court was specifically urged to abandon the claim of right defense to robbery as being incompatible with an orderly society. The Court declined to do so because it felt abandonment of the rule might lead to unjust results and because society was not without means to punish the accompanying violence. In this *Smith* case, the accused did not employ violence in order to obtain property to secure a debt.

Arguably the foregoing authorities might be stitched together to support the conclusion that a taking of collateral by force is not wrongful within the meaning of Art. 121 when the collateral's value does not exceed the amount of the debt it was taken to secure. I believe, however, a contrary result obtains. Firstly, none of the authorities cited above, or any other military authorities I am aware of, has held on the same material facts as this case that the taking of collateral by force is rightful. Secondly, there is a body of responsible authority which supports the conclusion that force may not be used to take property to secure a debt. Torcia, *supra*, § 366. *See also* Kristine C. Karnezis, Annotation; *Robbery, Attempted Robbery, or Assault to Commit Robbery, as Affected by Intent to Collect or Secure Debt or Claim*, 88 A.L.R.3d 1309 (1978). Thirdly, the Model Penal Code, to which the Court of Military Appeals has resorted in interpreting defenses to military offenses (*see United States v. Harris*, 29 M.J. 169 (C.M.A.1989)), does not recognize a claim of right defense by a creditor who takes property by force from his debtor. Model Penal Code § 222.1 n. 8 (citing *Commonwealth v. Sleighter*, 495 Pa. 262, 433 A.2d 469 (1981) (defendant was guilty of robbery and had no claim of right in taking by force rings victim was wearing, even if victim owed defendant a sum of money)). Fourthly, as the majority points out, the Court of Military Appeals has abandoned the "innocent purpose" defense respecting larceny and wrongful appropriation. *United States v. Johnson*, 17 M.J. 140 (C.M.A.1984) (no defense to charge of larceny of a police radio that accused took the property in jest); *United States v. Kastner*, 17 M.J. 11 (C.M.A.1983) (plea of guilty to wrongful appropriation of government property from a storage bunker was provident even though accused's motive was to demonstrate a lack of security measures). No longer is the accused's subjective motive for the taking determinative of criminal intent to steal or to appropriate. Fifthly, the Army Court of Military Review has recently held the claim of right defense to a charge of robbery "does not apply to the taking of money or valuables in liquidation of an uncertain obligation or debt for money." *United States v. Fell*, 33 M.J. 628, 631 (A.C.M.R.1991) (quoting *United States v. Cunningham*, 14 M.J.

539, 541 (A.C.M.R.1982), *rev'd on other grounds*, 15 M.J. 282 (C.M.A.1983)).

Finally, I note "[t]he purpose of military law is to promote justice, to assist in maintaining good order and discipline in the armed forces, to promote efficiency in the military establishment, and thereby strengthen the national security of the United States." MCM, 1984, Part I, ¶ 3. To this end, the armed forces have an interest in promoting the security of the personal property of the members of the force. The preservation of good order, discipline, and morale within the armed forces demands that disputes over personal property be minimized and above all settled without resort to violence.

Undoubtedly Congress proscribed larceny and wrongful appropriation because it recognized such acts are inimical to the maintenance of order, discipline, and morale, particularly when committed by one servicemember upon another. While military courts have recognized that under limited circumstances the employment of self-help in the recaption of one's own property was not a violation of the Code, they have not held that justice, good order, discipline, or efficiency requires the recognition of such a defense in a servicemember who wrests by force another's personal property on the tenuous basis of obtaining collateral.

Defenses justifying or excusing violence are severely limited. For example, an accused may not claim self-defense if he was an aggressor, engaged in mutual combat, or provoked the attack. R.C.M. 916(e)(4).

The seizure of property by one servicemember to induce payment of a claimed debt promotes reprisal, disorder, and violence. True, a servicemember who inflicts violence upon another member may be punished for the violent act, itself. But, order and discipline may best be served by removing the inducement to embark upon a course of action which may lead to further disorder and injury.

Military courts have already held that the so-called claim of right defense is inapplicable when the property taken exceeds the debt owed or when the debt arises from an illegal transaction. Similarly, I believe the defense must be denied when the means for obtaining the collateral are violent. It would be incongruous to hold on the one hand the appellant violated the Code by assaulting his victim, but on the other hand hold the acquisition of his property by these means was lawful. Taking the security by violent means betokens a criminal intent. In short, military law does not countenance thuggery or "debt enforcement." For the foregoing reasons I perceive no basis in law or public policy for recognizing a right in one servicemember to acquire from another collateral by force. On this basis I join in affirming the findings and sentence.