IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 29, 2006

## STATE OF TENNESSEE v. MAURICE LEONARD and KENNETH SHONDALE MASON

### Appeal from the Circuit Court for Bedford County
No. 15860, 15861     Lee Russell, Judge

---

### No. M2006-00136-CCA-R3-CD - Filed March 27, 2007

---

In this consolidated appeal, the Appellants, Maurice Leonard and Kenneth Shondale Mason, appeal their convictions by a Bedford County jury. Following a joint trial, Leonard and Mason were convicted of aggravated burglary, attempted robbery, assault, and false imprisonment. As a result of these convictions, Leonard received an effective sentence of four years, as a Range I offender, and Mason received an effective sentence of sixteen years as a Range II offender. On appeal, Leonard and Mason each raise two issues for our review: (1) whether the evidence is sufficient to support the convictions; and (2) whether the sentences imposed by the trial court are excessive. Following review, we affirm the judgments of conviction and resulting sentences.

### Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed

DAVID G. HAYES, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Michael Collins, Assistant Public Defender, Shelbyville, Tennessee, for the Appellant, Maurice Leonard; and Richard Dugger, Shelbyville, Tennessee, for the Appellant, Kenneth Shondale Mason.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; W. Michael McCown, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

At approximately 10:00 p.m. on the evening of June 5, 2005, the victim, Richard Harris, and his girlfriend, Cheryl McKinzie, had retired to their bedroom in their home at 509 Knob Creek Road in Bedford County. The victim was awakened by McKinzie, who informed him that someone was knocking on the door and ringing the doorbell. Not initially recognizing the late-night visitor, the victim opened the door and saw the Appellant Mason standing in the doorway. At the same time,

the victim saw the Appellant Leonard running towards the front door with a pistol in his hand. The victim attempted to shut the door, but Leonard managed to get his arm and hand, which held the pistol, through the doorway. As the two struggled, the gun discharged close to the victim's face, with the bullet lodging in a nearby bedroom door. During the ensuing struggle, the victim slipped on the rug he was standing on, and Leonard was able to force his way into the residence. The victim, however, was successful in closing the door before Mason could enter.

Once inside, Leonard, still in possession of the handgun, began waving the gun in the direction of the victim's face and began screaming at the victim, "Where's my fucking money," "I'm going to kill you," "I'm going to beat you," and "I want my mother fucking money." Soon thereafter, Leonard opened the door, allowing Mason into the residence. The two then ordered the victim to give them $250, which the victim stated he did not have. Upon learning that the victim did not have the money, Leonard informed the victim that they would take him to his bank and get the money from an ATM. The plan devised by Leonard called for Leonard to accompany the victim to the bank and for Mason to remain with McKinzie. During this period, Mason was searching through various drawers in the home. When the victim was dressing to go to the bank with Leonard, Mason hit the victim in the head with his fist, stating "don't you disrespect me." The victim related that he feared for his life during these events.

When Ms. McKinzie heard the gun discharge at the door, she immediately grabbed her cell phone, locked herself inside the bathroom, and called 911 from her cell phone. While she was in the bathroom, Leonard attempted to kick in the door, and Mason attempted to talk her into coming out. Soon after she called 911, law enforcement officers arrived. Upon hearing them arrive, Leonard told the victim to go outside and tell the officers that "it was a mistake." However, the victim, upon reaching safety outside, informed the officers what was occurring inside the home. The deputies, by means of a loud speaker, instructed the Appellants to step outside. Both Mason and Leonard complied and were placed under arrest. No weapon was found in either of the Appellants' possession. However, upon searching the premises, the deputies found the pistol used by Leonard hidden in a shopping bag in the front bedroom of the house.

The victim was acquainted with both of the Appellants. He admitted that he owed Leonard money for cocaine, which he had purchased from Leonard three weeks earlier. However, he stated that only $100 was owed for the cocaine. Regardless, both the victim and McKinzie were adamant that neither of the Appellants were invited into the residence that evening to collect any money owed.

On July 18, 2005, the Appellants were indicted in separate four-count indictments charging: (1) aggravated burglary of a habitation; (2) criminal attempt to commit aggravated robbery; (3) aggravated assault by use of a deadly weapon; and (4) false imprisonment. A joint trial was conducted on October 11 and 12, 2005, after which the Appellants were convicted of: (1) aggravated burglary; (2) attempted robbery, as a lesser offense of attempted aggravated robbery; (3) assault, as a lesser offense of aggravated assault; and (4) false imprisonment. A sentencing hearing was subsequently held on December 1, 2005. Following the presentation of evidence, the court sentenced Leonard, as a Range I offender, to four years for aggravated burglary, two years and six months for

attempted robbery, and eleven months and twenty days for each of the assault and false imprisonment convictions. The court further ordered that the sentences were to be served concurrently for an effective sentence of four years. The court sentenced Mason, as a Range II offender, to nine years for aggravated burglary and seven years for attempted robbery. Mason was sentenced to eleven months and twenty-nine days for each of the misdemeanor convictions of assault and false imprisonment. The court further ordered that the aggravated burglary and attempted robbery sentences be served consecutively for an effective sixteen-year sentence. Following the denial of their respective motions for new trials, timely appeals were filed.

**Analysis**

In this consolidated appeal, the Appellants raise two issues for our review: (1) whether the evidence presented is sufficient to support their convictions; and (2) whether the sentences imposed are excessive.

## I. Sufficiency of the Evidence

As noted, the Appellants were each convicted of aggravated burglary, a Class C felony, attempted robbery, a Class D felony, assault, a Class A misdemeanor, and false imprisonment, a Class A misdemeanor. In their respective briefs, each argues that the evidence is insufficient as a matter of law to support the convictions. In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). The weight to be given to both direct and circumstantial evidence and "the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958) (citations omitted).

Initially, we are constrained to note that although Appellant Leonard frames his issue as challenging all four of his convictions, his argument encompasses only the sufficiency of the evidence with regard to his conviction for aggravated burglary. Accordingly, we conclude that Leonard's challenge to his conviction for attempted robbery and the two misdemeanor convictions is waived for failure to present proper argument and citation to authorities. *See* Tenn. R. App. P. 24 & 27.

Moreover, the Appellant Mason appears to assert a general challenge to the convicting evidence, arguing that the State failed to prove the mental element of each crime with regard to all four of his convictions. He contends that the evidence of Leonard's "state of mind," which was adduced at trial, cannot be imputed to him because "there was no evidence regarding conspiracy to allow the same intent to attach to Mr. Mason." This argument ignores the principle that criminal responsibility may be imposed based upon "the person's own conduct, by the conduct of another for which the person is criminally responsible, or both." T.C.A. § 39-11-401(a) (2006). Tennessee Code Annotated section 39-11-402(2) (2006) provides that an appellant is criminally responsible for the conduct of another when, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, [the appellant] solicits, directs, aids, or attempts to aid another person to commit the offense[.]"[1] When an appellant is aware of the intentions of his co-defendants and proceeds to aid or attempt to aid in the endeavor, the appellant is responsible for all natural and probable consequences of his co-defendant's actions during the commission of the crime. *State v. Richmond*, 90 S.W.3d 648, 654 (Tenn. 2002). Thus, it is immaterial which of the two Appellants in this case actually committed the specific acts as both were actively engaged in committing the crimes and were, therefore, each responsible for the actions of the others. Mason's argument is, therefore, misplaced as the evidence establishes that he was clearly aware of Leonard's intent to enter the home to collect the money and proceeded to aid Leonard in the commission of the offenses.

### a. Attempted Robbery

Robbery is defined as the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a) (2006). Theft of property occurs when a person, acting with the intent to deprive the owner of property, knowingly obtains or exercises control over the property without the owner's effective consent. T.C.A. § 39-14-103 (2006). Criminal attempt, as applicable to the facts in this case, is committed when a person, "acting with the culpability otherwise required for the offense: . . . (2) [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part." T.C.A. § 39-12-101(a)(2) (2006).

Mason asserts that the State failed to establish a material element of robbery, *i.e.*, theft of property, because the evidence established that the actions taken by him and his co-defendant were

---

[1]The record reflects that the jury was properly instructed with regard to the law of criminal responsibility based upon the conduct of another.

-4-

merely an attempt to recover money due Leonard by the victim. He contends that there "was no evidence presented that Mr[.] Mason ever attempted to exercise control over any property belonging to [the victim] nor that he even intended to gain control of any property." Mason's argument ignores established law that one may not collect a debt in this state, regardless of its legitimacy, by force or violence. It is the "manner in which property is taken, rather than to whom it lawfully belongs, [which] is the issue in robbery offenses." *State v. Anthony Murff*, No. W2001-01459-CCA-R3-CD (Tenn. Crim. App. at Jackson, June 11, 2002) (citing *State v. Cannon*, 661 S.W.2d 893, 899 (Tenn. Crim. App. 1983)).[2]

At trial, the evidence established that the Appellants entered the victim's home by force and threatened to kill the victim unless he gave the Appellants $250. Clearly, these facts permit a rational juror to find that both Appellants had the intent to take the money from the victim without his consent, by violence or by putting the victim in fear. They were only prevented from doing so by the fact that the victim did not have any money in the home and that the trip to the bank was interrupted by the arrival of law enforcement officers. The evidence presented is sufficient to support Mason's conviction for criminal attempt to commit robbery.

### b. Aggravated Burglary

A person commits aggravated burglary who, without the effective consent of the property owner, enters a habitation and commits or attempts to commit a felony, theft, or assault. T.C.A. § 39-14-402(a), -403(a) (2006). Appellant Leonard contends that the State failed to carry its burden to support this conviction because the evidence established that he had permission to be in the victim's home. Appellant Mason also contends that the evidence shows "that Mr. Mason either thought he had permission to enter the property, or that he entered with the intent to receive payment

---

[2]Although neither Appellant asserted at trial the affirmative defense of "claim of right," as provided by Tennessee Code Annotated section 39-13-107 (2006), as noted above, on appeal, Mason argues that "Leonard was entitled to receive payment for goods he had previously supplied to [the victim]" and Mason had accompanied Leonard only for this purpose. In 1989, our criminal code was amended to include Tennessee Code Annotated section 39-14-107, which provides that "[i]t is an affirmative defense to prosecution . . . [for theft if] . . . the person: (1) [a]cted under an honest claim of right to the property or service involved[.]" T.C.A. § 39-14-107(1) (2003). However, in applying this statute, it is important to distinguish between those situations where a person uses self-help to recover a specific chattel to which he has the right to immediate possession and situations where a person attempts to collect a debt out of another's money with no pretense of ownership rights in the specific bills and coins. In the former situation, numerous jurisdictions have held that the intent to steal is absent when a person retakes wrongfully held specific personal property to which he has the right to immediate possession. *State v. Martin*, 516 P.2d 753, 755 (Or. Ct. App. 1973); *see also Moyers v. State*, 197 S.E. 846 (Ga. 1938); *State v. Pierce*, 490 P.2d 584 (KS. 1971); *Edwards v. State*, 49 Wis.2d 105, 113-14 (WI. 1970). We recognize that a panel of this court, in *Elliott v. State*, 454 S.W.2d 187 (Tenn. Crim. App. 1970), held that the right of possession of, or title to the property taken, is not the issue in a robbery offense, rather the gist of the offense is the felonious and forcible taking from the person of another goods of value by putting him in fear. However, the holding in *Elliott* preceded the statutory inclusion of the affirmative defense of "claim of right" now contained in our current criminal code. Nonetheless, it is clear in the present case that a claim of right defense is not applicable when the defendant is only attempting to collect money owed to him. *See Cannon*, 661 S.W.2d at 899; *Anthony Murff*, No. W2001-01459-CCA-R3-CD.

from previous goods provided to [the victim]." He further asserts that the proof does not establish that he entered "with the intent to commit a felony, a theft or an assault."

The Appellants' contention that they had permission to enter the residence is directly contradicted by the testimony of both the victim and Ms. McKinzie. The evidence presented at trial established that Mason knocked on the victim's door at approximately 10:00 p.m. on June 5. Upon opening the door, the victim saw Leonard advancing towards the door armed with a handgun. The victim immediately attempted to close the door to prevent entry to the two intruders. Nonetheless, Leonard was able to force his way into the home where he then demanded cash from the victim while brandishing the gun and threatening to kill him. It was Leonard who let Mason into the home after the Appellant had closed the door preventing his entry. Clearly, at this point, Mason was aware of the presence of the gun and the nature and character of the actions which he and Leonard were undertaking. The proof overwhelmingly establishes that the Appellants entered the victim's home, without his effective consent, and attempted to rob the victim of $250. This issue is without merit.

### c. Assault

"A person commits assault who: (1) [i]ntentionally, knowingly or recklessly causes bodily injury to another; [or] (2) [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury[.]" T.C.A. § 39-13-101(a)(1), (2) (2006). With regard to the assault conviction, Mason contends that the "facts do not support a finding that Mr. Mason assaulted [the victim] while in the residence as the testimony placed him at the bathroom door speaking with Ms. McKinzie." After review, we conclude that the evidence is sufficient to support the conviction.

The victim testified at trial that while he was attempting to put on his shoes to accompany Leonard to the bank, Mason struck him in the head with his fist. The jury heard this testimony and obviously accredited the victim's statement. *See Pappas*, 754 S.W.2d at 623. This issue is without merit.

### d. False imprisonment

"A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." T.C.A. § 39-13-302(a) (2006). Mason agues that the facts do not support a finding "that Mr. Mason ever knowingly held any party against their will."

The proof established that when the victim informed Leonard that he did not have $250, Leonard then told the victim that he would have to go to the bank and get the money. Mason was present and "watching every move [the victim made]" during this discussion. The victim specifically testified at trial that he did not feel free to leave under the circumstances. Clearly, based upon the joint actions of the Appellants, the victim's liberty was substantially interfered with. This issue is without merit.

-6-

**II. Sentencing**

    **a. Appellant Leonard**

    The Appellant Leonard asserts that the sentence imposed by the trial court is excessive and contrary to the law because the sentence imposed by the court "does not fit the crime or the offender." Specifically, he argues that the trial court "should have given less weight" to the enhancement factor of prior criminal history since his one prior "felony conviction was from 1988, about seventeen years ago." He contends that he "should have been sentenced to three years at 30% on the aggravated burglary, . . ." as opposed to the four-year sentence which was imposed.[3] When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. When conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the Appellant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2003); *Ashby*, 823 S.W.2d at 168.

    Leonard was convicted, as a Range I offender, of aggravated burglary, a Class C felony, which carries a sentence range of three to six years. T.C.A. § 40-35-112(a)(3) (2003). The presumptive sentence to be imposed by the trial court for a class C felony is the minimum sentence within the applicable range unless there are enhancement or mitigating factors present. T.C.A. § 40-35-210(c). When there are enhancement factors and no mitigating factors, the court may sentence above the minimum in the range. T.C.A. § 40-35-210(d). If both enhancement and mitigating factors are present, the court must start at the minimum sentence, enhance as appropriate for enhancement factors, and then reduce the sentence as appropriate for applicable mitigating factors. T.C.A. § 40-35-210(e).[4]

    In imposing a sentence of four years for the aggravated burglary conviction, the trial court found one enhancement and no mitigating factors. The court noted: "I do find that enhancing factor No. 1 is present, his previous history of criminal convictions or conviction. It is a very serious conviction, aggravated burglary, and it is also a very long time ago, 1988, but I do find that

---

[3]On appeal, Leonard contests only his sentence for aggravated burglary.

[4]Effective June 7, 2005, Tennessee Code Annotated sections 40-35-114 and 40-35-210 were rewritten in their entirety. *See* 2005 Tenn. Pub. Acts, ch. 353, §§ 5, 6. The recently enacted sentencing provisions are not applicable to the Appellants, however, as their crimes were committed on June 5, 2005, and no "waiver of . . . defendant's ex post facto protections" is included in the record before us. *See* T.C.A. § 40-35-114, Compiler's Notes.

enhancing factor to be present." The pre-sentence report reflects that Leonard has only one prior conviction for an aggravated burglary which occurred in 1988. According to the pre-sentence report, the sentence in that case was originally suspended but was later revoked.

On appeal, Leonard argues only that the weight applied to the enhancing factor by the trial court "did not comply with the 'purposes and principles' of the act" because of the age of the conviction. However, the weight to be assigned to appropriate enhancement and mitigating factors falls within the sound discretion of the trial court so long as that court complies with the purposes and principles of the 1989 Sentencing Act and its findings are supported by the record. *State v. Boggs*, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). The trial court, while recognizing that the prior conviction was "a very long time ago," still found it to be a "very serious conviction." Review of the record reveals that the trial court considered all the relevant factors and principles of sentencing in setting the length of Leonard's sentence. Accordingly, no sentencing error is shown.

### b. Appellant Mason

Next, the Appellant Mason contends that the trial court erred in imposing consecutive sentences. His entire argument is as follows:

> The court in sentencing Mr[.] Mason found him to be a Range II offender given his prior adult convictions for similar offenses. However the court used juvenile offenses to run his sentences consecutive to each other. That based on the sentencing guidelines, the appellant submits that all sentences should the court uphold the conviction, should have been run concurrent.

As argued by the State, the Appellant Mason has subjected this issue to waiver by his failure to cite to any relevant authority in support of his argument and his failure to cite to appropriate references to the record. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b). Nonetheless, we elect to review the issue.

Following the sentencing hearing, the trial court ordered that Mason's nine-year sentence for aggravated burglary and his seven-year sentence for attempted robbery be served consecutively. Initially, we note that the Appellant does not challenge the length of the respective sentences imposed, and we conclude that no error occurred in the trial court's application of various enhancement factors. In imposing consecutive sentencing, the court found as follows:

> There is a presumption in favor of concurrent sentencing, unless one of seven factors is present. I find that the second factor, . . . which is an extensive criminal record, is certainly present in this case. And for that reason, I am going to impose consecutive sentences to this extent: The "C" felony sentence and the "D" felony sentence will be consecutive to one another. The two misdemeanor convictions, I'm going to have be concurrent with the felony conviction, so we're looking at a total effective sentence of 16 years.

A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that "[t]he defendant is an offender whose record of criminal activity is extensive[.]" T.C.A. § 40-35-115(b)(2) (2003). The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved" under the circumstances. T.C.A. § 40-35-102(1), -103(2). Additionally, whether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court. *State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999).

On appeal, Mason contends that consecutive sentencing was improper only because "the court used juvenile offenses to run his sentences consecutive to each other." Initially, we are constrained to note that Mason's argument is misplaced as nothing in the trial court's findings indicate that the court did in fact rely upon Mason's prior juvenile convictions in imposing consecutive sentences. Regardless, this court has recently upheld the imposition of consecutive sentencing based in part on a defendant's juvenile record. *State v. Marcus E. Robinson*, No. M2005-00670-CCA-R3-CD (Tenn. Crim. App. at Nashville, Apr. 5, 2006), *perm. to appeal denied*, (Tenn. Oct. 2, 2006).

The pre-sentence report submitted in this case indicates that the Appellant Mason has the following prior convictions: (1) three convictions for misdemeanor theft; (2) one conviction for robbery; (3) four convictions for resisting arrest; (4) four convictions for driving on a revoked license; (5) one conviction for casual exchange, cocaine; (6) one conviction for possession of marijuana; (7) one conviction for criminal impersonation; and (8) one conviction for attempted aggravated robbery. These convictions are in addition to Mason's juvenile adjudications for two delinquent acts of aggravated robbery, one delinquent act of aggravated assault, and one delinquent act of petit larceny. Clearly, there can be no dispute that the Appellant Mason has an extensive criminal history. Thus, we find no error in the imposition of consecutive sentences.

## CONCLUSION

Based upon the foregoing, the Appellant Mason's convictions of aggravated burglary, criminal attempt to commit robbery, assault, and false imprisonment, and the resulting sentences are affirmed. Additionally, Leonard's conviction and sentence for aggravated burglary are affirmed.

_____
DAVID G. HAYES, JUDGE